W. R. Allen, Respondent, v. F. Rogers et al., Appellants.

St. Louis Court of Appeals, January 5, 1886.

1. Municipal Corporations—Legislative Powers—Ordinances.—An ordinance providing for street paving, passed at a special session of the municipal assembly of the city of St. Louis called by the mayor, under a message which recites, among other matters of legislation, "all matters embraced within section twenty-six, of article three, of the charter," which section empowers the assembly to provide for street paving, is not invalid because the message does not also direct attention to the article of the charter which relates to the method of exercising the power conferred by section twenty-six.

2. Contracts for Public Work.—A contract for public work, the form of which is made a part of the advertised proposal upon which the contract is awarded to the lowest bidder, is not rendered invalid by a provision therein that the contractor shall do such extra work as the street commissioner shall direct, at a price to be fixed by the commissioner.

Appeal from the St. Louis Circuit Court, George W. Lubke, Judge.

*Affirmed.*

J. L. and F. P. Blair, for the appellants: The municipal assembly had no power to pass the ordinance in question, since the mayor did not mention the subject matter of it in his message. *St. Louis v. Withaus*, 16 Mo. App. 247. The contract was improperly awarded. *Addis v. Pittsburg*, 85 Pa. St. 379 ; *Bigler v. Mayor*, 5

Abb. N. C. 51; *Kneeland v. Milwaukee*, 18 Wis. 411; *Wells v. Burnham*, 20 Wis. 112.

LEONARD WILCOX, for the respondent: A contract, as well as a statute or ordinance, may be void in part and not void *in toto*. *Lœhner v. Ins. Co.*, 17 Mo. 247-258; s. c., 19 Mo. 628; *Reichard v. Ins. Co.*, 31 Mo. 518; *St. Louis County Court v. Griswol*, 58 Mo. 199; *Quinette v. St. Louis*, 76 Mo. 303-404. General stipulation number four of the contract is not void, but is a necessary and lawful provision to insure the proper performance of such a work. *Tipton v. Norman*, 72 Mo. 384; Charter, art. 4, sects. 28, 35; Rev. Ord. 1881, 142-144; Rev. Ord., art. 3, sect. 2; *Id.* 72-74. The mayor's message sufficiently stated "the objects for which" the session was convened. The reference therein contained to particular sections of the charter, wherein the subjects of legislation are enumerated, made them a part of the message. *Potter v. Todd*, 73 Mo. 101.

THOMPSON, J., delivered the opinion of the court.

This is an action on a special tax bill, issued to the plaintiff by the city of St. Louis, as a contractor for the reconstruction of a certain portion of a street of the city, upon which the defendant's land abuts.

I. The first defence which is made to the action is that the ordinance was passed at a special session, and that the mayor in his message, submitted to the session, immediately after it was assembled, in which he designated the subjects of legislation for which the session was called, failed to designate the subject embraced in article six of the charter, which relates to the manner of assessing the costs of such improvements against adjacent property. It appears that the special session was rendered necessary by the fact that in the charter, as originally framed, by an evident oversight of its framers, no general session could be held on the first Tuesday in April, the time designated for the convening of regular sessions each year. The mayor was, therefore, obliged to

call a special session, and in his message, after the assembling of the session, he set forth at length the necessity which had impelled him to call it, and said: "The circumstances surrounding the present special session of the assembly are such that in my judgment it will conduce to the general interest of the city if the control lodged in the mayor by the above provisions of the charter is at once exercised in favor of all legislation, which, under the legislative powers conferred on me by the charter, is within your jurisdiction. In other words, it seems to me expedient to make the special session in effect a general session, by at once throwing open the doors of legislation; and, as I am compelled by the language of the charter to state the object for which the special session is convened, I do accordingly state that you are convened in special session for the purpose of legislating upon all matters and subjects embraced within and specified by sections twenty-six, thirty, thirty-two, of article three, and section four of article five, and section twelve of article seven, and sections one, two, four, five, six, of article ten, and of sections ten to seventeen, nineteen, of article sixteen of the charter of St. Louis." It thus appears that the mayor specially stated to the assembly, when thus assembled, in pursuance of his previous proclamation, among other subjects of legislation for which they had been called together, that embraced in section twenty-six, of article three, of the charter, which section, it will be remembered, contains in fourteen sub-sections the general grant of legislative power conferred upon the municipal assembly. This grant of power, among other subjects, includes the following: "To establish, open, vacate, alter, widen, extend, pave, or otherwise improve, and sprinkle all streets, avenues, sidewalks, alleys, wharves, and public grounds and squares, and provide for the payment of the costs and expenses thereof in the manner in this charter prescribed." Article six of the charter, which relates to street improvements and street openings, merely points out the mode in which the power conferred by the language above quoted is to be

exercised, and we, therefore, think that it was not necessary for the mayor in his message to direct the attention of the assembly specially to this article, especially in view of the fact that his message contains the broad statement that it seemed to him "expedient to make the special session in effect a general session, by at once throwing open the doors of legislation;" and we, therefore, think that the circuit court committed no error in refusing the instruction tendered by the defendant upon this point, and in giving an instruction to the effect that the municipal assembly had power to pass an ordinance authorizing the work, for the doing of which the tax bill sued on is issued. Our decision in the case of *St. Louis v. Withaus* (16 Mo. App. 247), has no bearing upon the question as here presented.

II. The second defence is that the contract under which the work was done was not let to the lowest bidder. This defence was set up in the answer, and is predicated on the fact that the following clause is found in the contract under which the work was done.: "The first party shall also do such extra work in connection with his contract as the street commissioner may especially direct, and if it shall be of a kind for which no price is stated in this contract, said price shall be fixed by said commissioner, but no claim for extra work shall be allowed unless the same was done in pursuance of special orders as aforesaid, and the claim presented as soon as practicable after work is done and before the final estimate." I regard this defence as opening up a very serious question. Section twenty-seven, of article six of the charter provides that the board of public improvements shall, in all cases, except in cases of necessary repairs, requiring prompt attention, prepare and submit to the assembly estimates of costs of any proposed work, and, under the direction of the ordinance, shall advertise for bids as provided, for purchases by the commissioner of supplies, and let out said work by contract to the lowest responsible bidder, subject to the approval of the council. Any other mode of letting out work shall be held as illegal

and void." The ordinance regulating the letting of public work, which is set out in the petition in this case *in hæc verba*, provides, among other things, that "said notice shall state the number of the letting, the nature of the work, the places at which the plans and specifications and forms of contracts may be seen, the hour and place of opening bids, and the time up to which bids will be received." It thus appears that the forms of contract under which this work was let, were referred to in the advertisement for bids, and that this necessarily became a part of the advertisement itself, as much, to all intents and purposes, as though they had been printed in the body of the advertisement. The bidders, then, were distinctly notified that bids would be received for the doing of certain designated work according to certain plans and specifications, which were open for inspection at a certain designated place, and, also, according to the form of a certain contract which provided that the competitor might be required to do such extra work in connection with his contract as the street commissioner might specially direct, and if it should be of a kind for which no price was stated in the contract, the price should be fixed by the commissioner, etc. The argument is that no bidder could know with certainty, under such a proposal, the amount and quantity of extra work which he might be required to do, or the price at which he might be required to do it; and that a proposal of such an indefinite nature must necessarily have the effect of stifling competition and preventing persons from bidding who are not in the confidence of the officials having the control of the work. In support of this argument we are referred to several cases in other jurisdictions, the general effect of which may be stated to be that contracts for public work not let out in compliance with the governing statute, charter, or ordinance, are void, and that there can not, in any case, be a recovery against a municipal corporation upon a *quantum meruit. Addis v. Pittsburg*, 85 Pa. St. 379 ; *Bigler v. Mayor*, 5 Abb. N. C. 51; *Kneeland v. Milwaukee*, 18 Wis. 411; *Wells v. Burnham*, 20 Wis.

112. No decisions are found in this state bearing upon the point as here presented.

I feel the full force of this argument, and I wish that the clause in the contract above quoted had been guarded, so as to make it more clearly appear that the extra work referred to was such extra work only as might be required owing to unforeseen circumstances in executing the work required by the contract as made. But we have come to the conclusion, after a careful consideration of the question, that this is the fair meaning of the language used. We interpret the language as meaning that if any extra work should be required in order to complete the contract as made, which has not been foreseen and provided for in the contract, the street commissioner may require the contractor to do it; that if it be work of a kind which is provided for in the contract, the contractor shall do it at the price or prices stipulated for in the contract; but if it be work of a kind which is not provided for in the contract, then the contractor shall do it at such price or prices as the street commissioner may fix. A similar clause is found in most, perhaps in all of the building contracts which have been the subject of litigation in cases appealed to this court. We can understand that this clause may have been inserted to provide for contingencies that a skilful survey might not enable the street commissioner to foresee, and that past experience of the officials who have the letting and controlling of such work, may have demonstrated the necessity of such a provision in such contracts. The power of a municipal corporation of making contracts for public work, the cost of which is made a charge upon abutting property owners, must of course be exercised in conformity with the terms of the instrument creating the power and prescribing the mode of its exercise. But our supreme court and this court, in recent decisions, have taken the view that a degree of strictness must not be exacted which renders the exercise of these powers difficult or impracticable. *Kemper v. King*, 11 Mo. App. 116, 129; *Creamer v. McCune*, 7 Mo. App. 91; *Eyermann*

*v. Provenchere*, 15 Mo. App. 256 ; *First National Bank v. Arnoldia*, 63 Mo. 229 ; *Sheehan v. Owen*, 82 Mo. 458.

It is sufficient that there was no substantial deviation from the prescribed method of exercising the power. Now, let us put ourselves for a moment in the place of the city officials who have the letting of these contracts. Suppose, for instance, that a contract is for the grading of a street to a certain level at so much per cubic yard for removing the earth ; suppose that as the work proceeds a hidden boulder or a hidden ledge of limestone is found above the prescribed level, which neither party to the contract supposed to exist ; or, suppose it becomes necessary to remove a gas pipe or sewer pipe near the surface, what is to be done in such a case? Must this unforeseen circumstance, entailing perhaps a small amount of extra work, require a new advertisement and a new letting ? We apprehend not. We apprehend that the doing of such an amount of extra work as may be required by such a circumstance, not great in itself and strictly incidental to the contract and necessary to the completion of the work intended, may be provided for in the manner in which it is provided for in this contract ; and that the fact that such a clause is in the contract thus made a part of the proposal, would not probably have the effect of deterring bidders and preventing competition.

It is to be observed that no evidence was offered in this case tending to show that such would be the probable effect of such a clause in such a contract. The power reserved in the contract to the street commissioner in directing the manner of the doing of the work and of rejecting materials furnished by the contractor, is a far greater power over the contractor, and one which might be exercised far more to his injury than the power which is conferred by this clause ; and yet it is not suggested that the existence of that power renders the contract void.

In the present tax bill no extra work of any kind is charged for. The sole question is whether the existence

of the clause above quoted in the form of a contract, which was part of the proposal, has the probable tendency of checking competition so that a letting under such a proposal is not a letting to the lowest bidder. We are of opinion that it has not.

The judgment is affirmed. All the judges concur.