JOSEPH MILLER, ADMINISTRATOR, Respondent, v. JOHN H. DUNLAP, Appellant.

St. Louis Court of Appeals, May 4, 1886.

1. EVIDENCE—ORAL—CONTRACTS.—Oral testimony is inadmissible to vary the terms of a written contract which is clear, precise, and unambiguous, and which embraces the entire agreement of the parties.

2. ———— CUSTOM—USAGE.—In an action on such a contract, testimony of a custom in the trade, touching the subject matter of the contract, is inadmissible to vary its terms.

3. ———— CONDUCT OF OPPOSING PARTY.—In such an action, evidence of conduct of the defendant, tending to show that he, for a time, entertained the plaintiff's view of the contract, is inadmissible.

4. ———— SUBSEQUENT NEGOTIATIONS.—Evidence of subsequent negotiations between the parties, touching the subject matter of the contract, is inadmissible, unless it is such as shows a discharge of the contract or a waiver of rights thereunder.

5. ———— ARBITRATION AND AWARD.—In an action on a contract, evidence of a previous arbitration which was not statutory, and of the defendant's refusal to abide by it, and of his reasons therefor, is inadmissible.

6. ———— JURY.—In an action on a written contract, it is error for the court to allow the question as to what was the contract to go to the jury.

7. MISCONDUCT OF ATTORNEY.—An attorney has no right to comment, in his argument to the jury, upon testimony which the court has excluded.

APPEAL from the St. Louis Circuit Court, GEORGE W. LUBKE, Judge.

*Reversed and remanded.*

KLEIN & FISSE, for the appellant: The fact that the bid by which it was sought to contradict the contract was in writing, made no difference, because the rule in-

cludes all written, as well as all oral, communications between the parties antecedent to the execution of the written contract.    Best on Evidence (Chamberlayne's Ed.) sect. 226, note 1 ;   *Koehring v. Muemminghoff*, 61 Mo. 403.

LAUGHLIN & KERN, for the respondent :   The court did not err in allowing the respondent to testify as to the bid submitted to the appellant by him ; nor in admitting expert testimony as to what words in the contract meant.   *McMinn v. Owen*, 2 Dall. 73 ;   *Bradley v. Packet Co.*, 13 Pet. 89 ;   *United States v. Peek*, 102 U. S. 64 ; *Shose v. Wilson*, 9 Clark's F. 556.

THOMPSON, J., delivered the opinion of the court.

The original plaintiffs in this action were a partnership firm.   But the plaintiff, Fathman, died pending the action, the plaintiff, Miller, took out letters of administration as surviving partner, and, by consent of parties, the cause was revived in his name.

The action is brought to recover a balance of $340.32, alleged to be due by the defendant to the plaintiffs for certain mill work furnished by the plaintiffs under a contract with the defendant, upon eight houses which the defendant was building for another party ; and, also, (in the second count of the petition) to recover the sum of $166.24, extra mill work, furnished by the plaintiffs to the defendant, at the defendant's request, and used by him in the building of the said houses.

The answer, after a general denial, sets up that on December 16, 1882, the plaintiffs and the defendant entered into a contract whereby the plaintiffs agreed to furnish the mill work for the houses named in accordance with the drawings, plans, elevations, and specifications furnished by the superintending architect in charge of the erection of the houses, which plans, specifications, etc., were made a part of the contract.   The answer agrees with the petition in stating that the sum agreed

to be paid for the mill work was $6,760, and it very nearly agrees with the petition as to the extra work charged for in the second count, but it charges that by the specifications it was provided that mill work should include, among other things, wainscoting; that the plaintiffs did not perform their contract in this, that they failed and refused to furnish the wainscoting upon request; and that, in consequence of this refusal, the defendant was compelled to purchase the same in the open market, at a cost of three hundred and six dollars, which was the reasonable value of the same. The answer, after stating a right of deduction of two small items, states the account so as to leave a balance due the plaintiffs of $187.36, and alleges that the defendant has tendered this sum to the plaintiffs, and again makes a tender of it. The two small items named, one of them involving a slight discrepancy between the plaintiffs' claim and the defendant's admission as to the extra work, and the other as to the value of the mill work on an omitted window, we shall lay out of view entirely, because they were not the subject of any very material controversy. The tender of $187.36 was proved, and it appeared that the plaintiffs refused to receive it, except as a payment on account, which offer the defendant declined. The real controversy was about the item of three hundred and six dollars, claimed by the defendant as a deduction, because of the refusal of the plaintiffs to furnish the wainscoting under the terms of their contract.

At the trial, the plaintiff, Fathman, testifying as a witness, admitted that the plaintiffs had made with the defendant a specific contract for the doing of the work for the sum of $6,760; that this contract was entered into by him on behalf of his firm with the defendant, with full knowledge of its contents; that by the terms of this contract the specifications annexed to the principal contract, under which the building was being erected, were made a part of this contract; that by these specifications the mill work was to include wainscoting; and

that there was no other written contract between the parties touching the subject matter of the controversy. With the testimony of this one witness the plaintiffs closed their case in chief, and thereafter the defendant put in evidence this contract. It provided that the plaintiffs should "make and erect, build, and furnish certain mill work on eight houses * * * 'design A' or 'design A alternate,' in accordance with the drawings, plans, elevations, and specifications furnished by the superintending architect and adopted for said eight houses, which are hereunto annexed and made a part of this contract." The plaintiffs also agreed to "provide and deliver, at their own cost and charges, all and every kind of material of good and sound quality and description, together with the cartage, scaffolding, tackles, tools, templets, rules, moulds, matters and things, labor and work, which may be necessary for the due, proper, and complete execution of this contract, and accordingly work, build, and complete in a good, sound, workmanlike manner, to the perfect satisfaction and approbation of the superintendent, Charles E. Illsley, the aforesaid mill work according to the specifications, drawings, dimensions, and explanations, and observations thereon or herein stated, described, or implied, or incident thereto, which may become necessary to the true intent or meaning thereof, although not specially and specifically stated or described by the aforesaid drawings and specifications. And should it appear that any of the works hereby intended to be done, or matters relative thereto, are not fully detailed or explained in the said specifications and drawings, the said parties of the second part shall apply to the superintendent or his representative for such further detailed explanations, and perform his orders as part of this contract."

Nothing, it should seem, could be more specific than this, or more distinctly incorporate the specifications under which the houses were to be erected, so far as they related to mill work, so as to make such specifications a

part of this contract. The specifications, thus made a part of the contract, recited the "mill work will include front cornice, all doors, sash, frames, blinds, shutters, jambs and finish, including panel backs, elbows, and soffits, base, *wainscot*, shelving, and strips, wainscoting, and bath and basin fittings, beads and plaster corners, canopy brackets."

No contract could have been drawn which would have imposed upon the plaintiffs in more distinct terms the obligation to furnish the wainscoting for the eight houses named. Nevertheless, under the rulings made by the court, almost the whole controversy, extending through a protracted jury trial, was, whether the plaintiffs had, in point of fact, agreed to furnish wainscoting.

I. Against the objections of the defendant, the court allowed the plaintiff to give evidence of the antecedent bid under which he claimed that his firm did the work, together with the antecedent negotiations which led up to it. This evidence was wholly irrelevant. The making of the contract having been admitted by the deceased plaintiff in his testimony, the plaintiffs on this testimony conceded the defence, so far as the element concerning the wainscoting was concerned, except in regard to the reasonable value of the wainscoting which the defendant had been obliged to buy in consequence of the refusal of the plaintiffs to complete the contract according to its terms. The contract was clear, precise, unambiguous, and not susceptible of parol explanation. Need it be also said that when two parties, who are *sui juris*, deliberately enter into a contract in writing, knowing its terms, they are estopped by the contract and that all precedent negotiations are merged therein? If in any respect the parties to the contract had made a mutual mistake, so that upon any essential feature of it their minds have not, in fact, met, the party suffering in consequence of the mistake might have maintained an action in the nature of a suit in equity to reform the con-

tract and to recover upon it as reformed. But this action is not so brought. It is brought to recover on the contract as it exists, and the contract, as it exists, shows that this portion of the defence is well established, except, only, as to the question of value. The whole inquiry, then, as to the antecedent bid, if there were one, the antecedent negotiations, subsequent negotiations not amounting to a new contract, or to an estoppel, bids which had been made by other parties, the habit of the architect who superintended this work of including wainscoting in mill work in his other contracts, and a mass of other detail which has incumbered this record to the extent of nearly one hundred and fifty pages, was wholly irrelevant.

II. This may especially be said concerning a mass of evidence which the court allowed the plaintiff to introduce in rebuttal as to the custom among builders as to what was included in mill work. The contract having distinctly provided what should be included in mill work in this case, we can not imagine upon what conception of the law such evidence could have been admitted. It was totally irrelevant, and, of course, prejudicial.

III. The same observations will apply to the instructions upon which the case was put to the jury. Notwithstanding the fact that the co-plaintiff (since deceased), between whom and the defendant the contract had been made, had distinctly admitted the making of it, and that there was no evidence tending to show that there was any other written contract between the parties touching the subject matter of it, or any subsequent parol agreement releasing the plaintiffs from their obligation of furnishing the wainscoting, as required by the terms of the contract, the court left it to the jury to say whether or not the contract obliged the plaintiffs to furnish the wainscoting, and refused instructions to the effect that they were obliged to furnish the wainscoting, as required by the terms of the contract, and that those terms could not be varied by any customs of the trade as to the

meaning of the words "mill work." These rulings proceeded upon a total misconception of the principles upon which the case should have been tried. The contract having been admitted and put in evidence, it was the duty of the court to hold the plaintiffs to the contract, to direct the jury that the rights of the contesting parties were to be determined thereby, and to expound to them its meaning, instead of leaving it to them to say what the contract really was.

IV. An effort was made on the part of the plaintiffs to prove that there had been an arbitration between the parties before the bringing of the suit, which, though not a statutory arbitration, had resulted in an award against the defendant. The court at first excluded this evidence, proceeding upon the most obvious grounds, and then allowed the plaintiffs' counsel, by certain ingenious manœuvering, to get before the jury the fact that such an arbitration had been had; that it had resulted in an award against the defendant, and that he had refused to perform the award on the ground that it had not been made in his favor. In his argument to the jury the counsel for the plaintiff made use of this evidence in the following language: "Well, there is something here to show that arbitrators met. They do not generally meet except when they are requested. Mr. Dunlap (the defendant) said that they met at his office, and what they did I am not going to discuss. It is in evidence that at Dunlap's office these men met. At whose request? At Dunlap's. Well, did they go there for fun? Did they go there for fun, or for business? Suffice it to say that this suit is in court, and that somebody has violated his word." This statement was objected to by the defendant, on the ground that there was no evidence to support it, and because the court had excluded all evidence offered to show that an arbitration was attempted or had taken place; and the defendant at the time requested, orally, that the court would so instruct the jury and would stop counsel, which request the court refused, and

the defendant excepted. Not only was this evidence wholly inadmissible and manifestly prejudicial, but the counsel was thus allowed to make an unfair and improper use of it. The admission of any evidence touching this arbitration and the refusal of the defendant to perform the award, direct or indirect, stands on the same footing as evidence of a former trial in the same case and of the verdict, which, upon such trial, was rendered. Must we cite a book or prolong argument upon such a point?

V. The plaintiffs' counsel served upon the defendant a written notice to produce a certain paper—the proposition or bid claimed to have been made by the plaintiffs to the defendant, which we have already held was immaterial. On the bottom of this paper there was a blank space left for a reply or return. The defendant had written in this blank space the following reply:

" St. Louis, October 28, 1884.

" Mr. Laughlin :
" *Sir :*—

" In answer to your request or notice to produce certain propositions pertaining to the suit now pending between Messrs. Fathman & Miller, and myself, will say that, aside from questioning your authority to make such a demand, that any documents in my possession which will facilitate justice in this case will be produced, and particularly those pertaining to my interests, at the proper time. Any further communications on this subject will please be addressed to my attorneys, Messrs. Klein & Fisse, Olive and Fifth.

" Respectfully,
"J. A. Dunlap."

The defendant's evidence showed that this was merely a sketch of a reply which he had made upon the paper, but had never sent. He denied having the paper called for, and merely referred to this notice to refresh his memory when testifying as a witness; whereupon the plaintiffs' counsel demanded the paper of him, and,

upon his delivering it over to the plaintiffs' counsel, the latter put this reply in evidence against the defendant's objection. In his argument to the jury, the plaintiffs' counsel dwelt upon this item of evidence as follows: "The testimony of Fathman is, that Fathman went to Dunlap's house, saw there the itemized bid; but Dunlap concealed it; he suppressed it, as in this letter he stated he would. When the lawyer read that message demanding that writing—and, by the way, you will bear in mind that he had in possession that contract—he had in his possession all those papers, but not that demand, and, under the impulse of the moment, he wrote a telling letter to the lawyer, which, after reflection, he thought it wise to keep back, and which he gave out here without remembering; 'I will produce at the trial all the papers that justice demands, and particularly all that is to my interest.' He gave it away right there in that letter which he produced. That would show, without the other, that he did exactly what he said he would—produce everything here that was to his interest, and everything that was against him he would keep back. That is what he said." Aside from the fact that that was *not* what he said, and that counsel made an unfair and unjust distortion of the written instrument itself, in thus misstating it to the jury, we hold that it was not admissible in evidence at all. It was a mere private memorandum which had never been delivered to the opposite party for any purpose connected with the suit. He had evidently written it without proper consideration, as men often write when their minds are heated by controversy, and, on reflection, had concluded that it was not proper to send it. He had used the notice to refresh his memory at the trial and handed it over, perhaps in astonishment, in obedience to a peremptory demand of plaintiffs' counsel: "Let me have that, sir." The plaintiff had no more right to put a private writing of that kind in evidence, to the prejudice of the defendant, than he would have to detail what the defendant had said

concerning the case while talking to himself in his apartments, or while talking in his sleep. An admission, in order to be evidence, must be uttered to some one either by parol or in writing.

VI. Complaint is made that the counsel for the plaintiff, in his argument to the jury, was allowed by the court, against the protests of the defendant, in other respects, to state facts before the jury which were not in evidence, and that the court refused to check counsel in this course of argument. We have examined this record with patience and care, and, without enlarging upon this objection, as the case will, necessarily, take a different course upon another trial, we will merely say that this examination leads us to the conclusion that the counsel for the plaintiff, in a commendable zeal for his client, passed beyond the just limits allowed to advocacy in arguing the effect of the evidence to the jury.

VII. The plaintiff gave evidence tending to show that a short time after the making of the written contract, under which the materials were furnished, the defendant had invited a bid from the plaintiffs for doing the wainscoting upon the houses; that the plaintiffs had given the defendant a bid, but that, as it was less favorable than a bid which the defendant received from another party, the defendant had awarded the furnishing of the wainscoting to such other party. The manifest purpose of this evidence was to show that, at the time when the contract was let, and for some time thereafter, it had been the defendant's understanding that the contract did not require the plaintiffs to furnish the wainscoting. The defendant's version of this was different; but, nevertheless, the defendant asked and the court refused an instruction to the effect that if this arrangement was made with such other person by the defendant, while under a mistake of fact as to the plaintiffs' obligation to furnish the wainscoting, and that, upon discovering such mistake, and when it became necessary to use the wainscoting, and before the defendant

had procured it from any other person, he notified the plaintiffs that it was a part of their undertaking to furnish it, and requested them to furnish it, which request was by them refused, the fact of such arrangement with such third person would not affect the duty of the plaintiffs to furnish the wainscoting. This evidence was totally irrelevant to any issue in the case. If the action had been an action to reform the contract, on the ground of a mutual mistake, then evidence that the defendant had had this understanding of the contract at the time it was made, and for a considerable time thereafter, would have been pertinent. But as this was not the purpose of the suit, the contract fixed and established the rights of the parties, and a mistake on the part of the defendant, as to his rights thereunder, provided he discovered and corrected the same before the plaintiffs had suffered any prejudice therefrom, would not afford any defence to them for failing to perform the contract as made.

VIII. Another instruction requested by the defendant and refused by the court, told the jury that, although they might believe from the evidence that subsequently to the execution of the written contract, the plaintiffs and the defendant had had some conversation or negotiation as to the furnishing of wainscoting by the plaintiffs, yet such subsequent conversations or dealings did not in any way affect the written contract, unless they culminated in a new agreement concerning the wainscoting, different from that contained in the written agreement. We think it enough to say, concerning this instruction, that the evidence was irrelevant, and that, if the case had been properly tried, the tender of such an instruction would not have been necessary. Evidence of subsequent negotiations touching this disputed matter was totally immaterial, unless such negotiations resulted either, (1) In the discharge of this part of the contract by a subsequent agreement; or, (2) In a waiver by the defendant of his rights in respect of this part of the contract and an acceptance of such waiver and an acting

upon the same by the plaintiffs, under such circumstances as to estop the defendant from thereafter insisting upon the performance of the contract as made. If, for instance, he had merely told the plaintiffs upon one day that he would not insist upon the performance of this contract, we do not see that he would not be at liberty to change his mind on the following day, and insist upon its performance, since his release of the plaintiffs from their obligation would be without consideration; but if, in the meantime, their situation had so changed, by reason of an advance in the price of material or labor, a diminution of their facilities for doing such work, or the taking of other contracts by them, as to make it more difficult for them to perform the contract than it would have been at the time the waiver was made, then it seems clear, upon principle, that the waiver, although not supported by any consideration at the time when it was made, would operate against the defendant by way of estoppel and preclude him from insisting upon the performance of the contract according to its terms.

We do not think it necessary to make any further observations upon this record. It should, perhaps, be said, on the one hand, that much of the irrelevant matter with which it is encumbered was introduced by the defendant, and, on the other, that this course on the part of the defendant seems to have been rendered necessary as an act of prudence, in view of the erroneous theory upon which the court started, at the outset, to try the case.

The judgment will be reversed and the cause remanded. It is so ordered. All the judges concur.