KANSAS CITY GRADING COMPANY, Appellant, v. HOWARD M. HOLDEN, Respondent.

Kansas City Court of Appeals, November 19, 1888.

1. **Charter of Kansas City:** LOCAL ASSESSMENTS UNDER : GRADING OF STREETS. It is a fundamental rule that a local assessment or tax for a local benefit should be distributed among and imposed upon all equally standing in like relations. Under the charter of the City of Kansas and the rule above stated, one street cannot, by ordinance or contract, be graded at the expense of the property-holders of another.

2. ——— : ——— : CASE ADJUDGED. It is a part of the contract for the grading of May street upon which the tax bill is issued, in this case, that the contractor shall grade Ninth street according to the specifications to the full width. And so if the grading on Ninth street had not been done as required the contractor would not have been entitled to this tax bill. *Held* that the contract violates the principle governing local assessments, and cannot be enforced. [RAMSAY, J., *dissents*].

*Appeal from Jackson Circuit Court.*—HON. TURNER A. GILL, Judge.

AFFIRMED.

*Certified to Supreme Court.*

Statement of case by the court.

This is an action upon special tax bills issued for the grading of May street, in Kansas City, from Sixth to Ninth streets. The plaintiff did the work under a contract with the city, and seeks to enforce the lien of the bills against the real estate of defendants. Defendant admits the doing of the work, the signature of the city engineer to the bills, and the ownership of the real estate described in the bills, but claims that the contract between plaintiff and the city, under which the work was done, is void, and that the bills cannot therefore be collected. The contract is claimed to be void, because the specifications upon which the contract was let to the lowest bidder, the advertisement for bids, and the contract itself contained a provision specifying that the earth and quarry rubbish taken from the street (the work being all excavation) was to be deposited on Ninth street between Broadway and Washington streets, until that part of it was brought to grade and full width, and that the remainder was to be deposited in Eighth street between Broadway and Bank streets, in Bank street between Seventh and Ninth streets, and in an alley in block 2, Lucas Place. This it was claimed required the contractor to grade other streets at the expense of the May street property-owners, and made the contract and all tax bills issued under it void. Plaintiff claimed that this provision was put in, in pursuance of section 30 of chapter 31, of the Revised Ordinances of the city, which authorizes the city engineer, in letting contracts for grading streets, to direct where any surplus material should be deposited, and that it amounted any way to nothing more than a permission to put the surplus material in the streets designated. The testimony showed that the work was done at a reasonable price, and that the places where the earth was deposited were closer to the work than any other places where it could have been deposited.

There was a verdict and judgment for defendants, from which plaintiff has appealed.

*Johnson & Lucas*, for the appellant.

(1) No testimony was admissible to sustain the defenses tendered by the answer. (*a*) If defendants were not injured by the work being so done as to benefit others, they cannot invoke the benefit to others to discharge their liability for benefits accruing to them. *City v. Long*, 31 Mo. 374; *Moore v. Albany*, 98 N. Y. 396. (*b*) The contract was let to the lowest bidder after the same had been duly advertised, and the testimony shows that the places where the earth was deposited were the nearest to the place of excavation at which it could have been deposited. (*c*) It nowhere appears from the pleadings that the city engineer sought to grade any other street at the cost and expense of defendants, and for that reason plaintiff's objection should have been sustained. (2) No authorities need be cited to show that the action of the court in ordering section 31 of chapter 38 of the ordinances of the City of Kansas to be read in evidence was error. And this action of the court could have none but a prejudicial effect upon the jury so far as the plaintiff was concerned. (3) Plaintiff's instruction should have been given. Defendants admitted that the contract had been let to plaintiff, and on the part of plaintiff fully complied with, and introduced no evidence that tended to show that the cost of grading said street had been increased by the mode adopted in letting the contract, or that they had been injured or damaged thereby. There was a complete failure of testimony. *Morgan v. Durfee*, 69 Mo. 469; *Charles v. Patch*, 87 Mo. 450; *Hunt v. Railroad*, 89 Mo. 607; *O'Reilley v. City*, 39 Hun, 286; *Transfer Co. v. Huling*, 22 Mo. App. 654. (4) The instruction given for defendants ought to have been refused. (*a*) It was for the court to determine the legal effect of the plans and specifications, and advertisement, bid and contract, and it was error to submit an undisputed question to the jury. *Hickey v. Ryan*, 15 Mo. 62; *Miller v. Dunlap*, 22 Mo. App. 97; *Fruin v. Railroad*, 89 Mo. 404. (*b*) The

instruction given does not correspond with the pleadings. *Bank v. Armstrong*, 62 Mo. 59; *Bank v. Murdock*, 62 Mo. 70. (c) The issues cannot be changed by an instruction, and this the instruction in question seeks to do. *Glass v. Gelvin*, 80 Mo. 297; *Beauchamp v. Higgins*, 20 Mo. App. 514. The issue presented by the answer was, that by reason of the mode adopted in letting the contract the cost of grading the street had been increased. The instruction told the jury that if they found that the contract, advertisement and bid contained certain specifications, then the contract was void. *Glass v. Gelvin*, *supra*. (d) The city had the right to let the contract, and the contractor, or city, the right to use the waste earth in filling other streets in the city, and no damage was done to defendants by reason of any action of the city, its engineer or contractor. *Huston v. Fort Atkinson*, 56 Wis. 350; *New Haven v. Sergeant*, 38 Conn. 50; *Bissell v. Collins*, 28 Mich. 277; *Neenan v. Smith*, 60 Mo. 292.

*C. O. Tichenor*, for the respondent.

(1) Tax bills are valid because the land against which they are issued is presumed to be benefitted to the extent at least of their amount. "Special assessments are made upon the assumption that a portion of the community is to be specially and particularly benefitted in the enhancement of the value of property peculiarly situated as regards a contemplated expenditure of public funds; and in addition to the general levy, they demand that special contribution, in consideration of the special benefit, shall be made by the persons receiving it." Cooley on Tax. 416. "General taxation implies a distribution of the burden upon some general rule of equality, so a local assessment or tax for a local benefit should be distributed among and imposed upon all equally standing in like relation." Hence, we say that special tax bills are based upon two principles—first, that the property assessed is benefitted to the

extent of the tax ; second, that the property so bene-
fitted is taxed. (2) Section 2, article 7, of the charter,
says : '' The cost of grading any street  *  *  *  shall
be charged as a special tax on all property on both sides
of said street  *  *  *  graded,'' etc. To grade means,
of course, to bring to grade, either by means of a fill or
a cut. Here we have the most valuable ground on the
greater thoroughfare paying nothing for completing the
grading of a portion of the same, fully completed to full
width and to grade, while the less valuable property
pays the whole of the cost. This kind of doctrine will
breed all kinds of schemes. Here we see the engineer
of a street railway (which cannot be built until Ninth
street is graded) circulating a petition for the grading of
May street ; the president of the road loans the money
necessary to pay the tax bill to one lot-owner to get him
to sign the petition. (3) Section 1 of article 7 of the
charter of Kansas City provides that ''no street, etc.,
shall be graded  *  *  *  at the expense of property-
owners fronting on it, unless a majority of the owners,
in front feet, on such street, and residents of.Kansas
City, shall petition the common council to have such
street graded.'' Section 8 of same article provides. for
publication, etc. The object of the notice was to give
the owner a chance to be heard. Such requirements
must be rigidly adhered to. ` City v. Casey, 3 Bush, 701 ;
City v. Swope, 79 Mo. 446 ; Roberts v. Easton, 19 O. St.
88. (4) The time for a general meeting of the common
council was a matter of law, that for a special meeting
was a matter of fact. Nixon v. Ruple, 1 Vroom, 60 ;
Charter, art. 1, sec. 14, and art. 4, secs. 8 and 9. Hence,
the owner was bound to know the time of a general
meeting. It was not necessary to state it in the notice.
The law would presume the time to be the next general
meeting. After it was published, a special meeting was
called of which the owner was not notified and hence
could not act. The council acted too soon, so that their
action could not do away with a proper petition. If it
was not a proper one the owner would be allowed to
show it. State v. Road Com'rs, 41 N. J. 89; City v.

*Edwards,* 78 Pa. 63 ; *Olds v. Erie,* 79 Pa. 383 ; *State v. City,* 1 Dutch. 310 ; *State v. City,* 2 Dutch. 446 ; *Scott v. Dickinson,* 14 Pick. 276 ; *Harris v. Sturdevant,* 29 Me. 366 ; *Shriver v. Stevens,* 20 Pa. 138 ; 38 N. J. L. 97. (5) The time given in the notice must be reasonable. *Rand v. Wilden,* 11 Cush. 296 ; *City v. Edwards,* 78 Pa. 63.

ELLISON, P. J.—At that part of Ninth street named in the contract and specifications for grading May street, there was a gulch or hollow, from forty to sixty feet in depth.. May street is near Ninth, but from the formation of the earth in that vicinity, to bring these streets to grade, it required excavation on May and filling in on Ninth. The result of the fulfillment of the contract was, that both streets were brought to grade at the expense of one. The charter of the city provides that : "The cost of grading any street * * * shall be charged as a special tax on all property on both sides of said street * * * graded," etc. To grade means, of course, to bring to grade, either by means of a fill or a cut. It is a fundamental rule that "a local assessment or tax for a local benefit should be distributed among and imposed upon all equally standing in like relation." Under the charter of the City of Kansas and the familiar rule governing local assessments, it is quite evident and apparent that one street cannot, by ordinance or contract, be graded at the expense of the property holders of another. The suggestions made in favor of the legality of these proceedings are that the work done in Ninth by filling and leveling it, its full width, to grade did not enhance the cost of the work on May street ; that the dirt taken from May might as well be deposited in the hollow on Ninth, as at any other point. In other words, and it is the strongest suggestion to be made in favor of plaintiff's case, the fill on Ninth street was a mere incident to the excavation on May ; and while it may benefit Ninth, it is a natural result which often follows a public improvement. But, to my mind, the fact is, that the filling of Ninth street is not the mere

incident resulting from the excavating of May. It is a part of the *contract* upon which this tax bill is founded, that the contractor *shall* grade Ninth street according to specifications, to its full width. And so if the work or grading on Ninth street had not been done as required by the contract and specifications the contractor would not have been entitled to this tax bill. One cannot close his eyes on the fact that the contract in this case bound the contractor to grade *both* streets, one by a cut and the other by a fill. Both were by the contract to be brought to the established grade, one by cutting down and the other by filling up. If he failed to do either, he failed in the performance necessary to entitle him to the tax bill. Suppose this matter had been the other way, and instead of an ordinance to improve May street, it had been to improve Ninth, and the contract had been that the contractor should get the earth necessary to make the fill on Ninth by excavating May its full width to grade; would it be right or just that the full cost of grading both streets should be put upon Ninth? If the filling of Ninth street had been the mere incident to the work on May, the case would be wholly unlike this. In this case, as I have said, the contract is to bring both streets to grade at the expense of one. The argument that the work on Ninth has not added to the cost of grading May amounts to simply this: that as it would cost the property-holders on May as much to grade their street alone as it would to grade both it and Ninth, therefore they shall be *compelled* to grade Ninth. If the argument be based on fact, it results from the natural lay of the earth at these points, and certainly both streets are entitled to share in this natural advantage when both are improved under the same contract.

Sections 30 and 31 of chapter 31 of the general ordinances of Kansas City were introduced in evidence, section 30, by plaintiffs and 31 by defendants, but these, separately or together, cannot be interpreted to overthrow the principle I have stated in a case of this character.

The judgment, with the concurrence of the other judges, is affirmed.

### On rehearing.

ELLISON, P. J.—We still adhere to the opinion filed in this cause at the first hearing. It is not a question of whether it was a pecuniary loss to May street property-owners. That one should be compelled to do labor for another, or expend money for the benefit of another, is an invasion of common right, and this, regardless of whether the labor or the outlay had harmed him. This is so self-evident as not to need illustration.

The judgment is affirmed. HALL, J., concurs.

Since the cause was originally decided, RAMSAY, J., has become a member of this court and sat at the rehearing; he dissents in a separate opinion.

RAMSAY, J. (*dissenting.*)—The plaintiff in this suit seeks to recover of the defendants the amount of six special tax bills, issued to it by the city engineer of the City of Kansas, against the property of the defendants for their portion of their costs of grading May street in said city, from Sixth to Ninth streets, under a contract with said city. No question is made upon the sufficiency of the petition or the regularity of the bills upon their face. Defendants in their answer admit that plaintiff did the work, under the contract according to its terms, and that defendants were owners of real estate fronting on May street at the point where the grading was done, but claim that the contract between plaintiff and the city, under which the work was done, is void, and that the tax bills cannot therefore be collected, because the specifications upon which the contract was let to the lowest bidder, the advertisements for bids, and the contract itself contained a provision specifying that the earth and quarry rubbish taken from May street (the work there being all excavation) was to be deposited in Ninth street between Broadway and Washington streets, until that part of it was brought to grade

and full width, and that the remainder was to be deposited in Eighth street between Broadway and Bank streets, in Bank street between Seventh and Ninth streets, and in an alley in block 2, Lucas Place. This, it was claimed, required the contractor to grade other streets at the expense of the defendants and other property-owners fronting on May street and rendered the contract and all tax bills issued under it void. Plaintiff, in its reply, claimed that such provision was incorporated in the contract in pursuance of section 30 of chapter 31, of the Revised Ordinances of the city, which authorized the city engineer, in letting contracts for grading streets, to direct where any surplus material should be deposited, and was nothing more than a permission to put the surplus material in the streets designated.

The defendants introduced in evidence the contract under which the grading was done, the material part of which is as follows : "The earth and quarry rubbish will be deposited on Ninth street from Broadway to Washington streets, until that part of Ninth street is brought to grade and full width. The remaining part will be deposited in Eighth street between Broadway and Bank streets, on Bank street between Seventh and Ninth streets, and on alley in block 2, Lucas Place addition." The contract otherwise was in the usual form as to the character and manner of grading, price per cubic yard, etc. The testimony of defendants Holden and Cross showed that the work was done at a reasonable price and that the places where the earth was deposited were closer to the work than any other places where it could have been deposited,—Holden testifying : "I never was opposed to the grading. It was the way the grading was done—the grading of two streets at the expense of one that I objected to ; " and Cross testifying : "Nineteen and seven-eighths cents per cubic yard for dirt (the price specified in the contract) was a reasonable price. It was less than I could get it done for on my lot. * * * I think that there is no other gulch

in that vicinity as near to May street as that one is (the one in Ninth street where surplus dirt was dumped) into which the dirt could have been thrown." No evidence conflicted with this.

The plaintiff in rebuttal read in evidence section 30 of chapter 31, of the Revised Ordinances of the city, and over plaintiff's objection, defendants were permitted to read section 31 of said chapter.

The court refused an instruction asked by plaintiff which was in the nature of a demurrer to the defendants' evidence, and against plaintiff's objection, at defendants' request, gave this instruction:

"If the jury believe from the evidence that the plans and specifications for doing the work in controversy provided that the contractor must fill a certain portion of another and different street to full width and to grade, that the advertisement for bids and the bids were made in reference to such plans and specifications, and that the contract entered into between plaintiff and the city contained a provision that in doing the work in controversy the plaintiff must fill a portion of another and different street to grade and to its full width, then such contract is null and void, and you will find for the defendants."

The verdict and judgment were for the defendants, from the latter of which plaintiff has appealed to this court.

I am by no means certain that I comprehend the theory adopted by counsel for defendants and the circuit court at the trial. It is evident that they thought something had been developed in the testimony which ought to be submitted to the jury. Yet the instruction given submitted no controverted question of fact, no question of fraud or of injury to the defendants. It, in effect, handed to the jury the specifications, the advertisement for bids and the contract under which the work was done, and said if these contain a provision that in doing the work in controversy the plaintiff must fill a portion of another and different street to grade and to its full width, then such contract is null and void, and

you will find for defendants.   There appears no ambiguity in the contract itself, and if the contentions of plaintiff that such provision was but a permission to put the surplus material in the streets designated, *without additional cost or expense* to defendants, and of defendants that such provision required the contractor to grade other streets at the *expense* of the May street property-owners, created, in the mind of the court, a latent ambiguity or uncertainty as to the true meaning of the parties, while it was proper to resort to extrinsic evidence in search of such meaning, it was undoubtedly the duty of the court to interpret the contract and to expound to the jury its meaning, instead of leaving it to them to say what the contract and its requirements really were. *Miller v. Dunlap*, 22 Mo. App. 97 ; Bishop on Cont. [En. Ed.] sec. 256 ; 2 Parsons on Cont. [5 Ed.] 491 *et seq.; Gruin v. Railroad*, 89 Mo. *loc cit.* 404.   If the conjecture is a correct one, that the conflicting contentions of parties produced uncertainty as to the meaning of the parties, and as to the proper construction to be placed upon the contract, and the oral evidence introduced tended to sustain both contentions (which I do not admit was the case here), while a question of *fact* might have been properly submitted to the jury, the duty of the court nevertheless would have been to give the written contract its legal construction as affected by either side of the evidence they might decide most potent.   The instruction given, in my opinion, presented to the jury a pure question of law.   It makes no allusion to the oral or other record evidence introduced, and, while assuming to present the issue, if any, raised by the defendants' answer, it virtually took the case from the jury and directed a finding for the defendants. This I think was error.   Had the instruction in direct terms required a verdict for the defendants, could we sustain it ?   In connection with this question, we may also consider the converse of the proposition, did the court err in refusing to give the instruction asked by plaintiff for a finding in its favor ?

The common council of the City of Kansas have power to cause to be graded all streets, sidewalks, alleys and public highways, or parts thereof, within the city, at such time, to such extent and with such material as shall be provided by ordinance. It has not the power, however, to do such grading at the *expense of property-holders* owning the property fronting the street graded unless a majority of the real-estate owners fronting on such street petition the common council to have such work done. Amended Charter, sec. 1, art. 8.

Under section 30, of chapter 31, of the Revised Ordinances of the city, passed in pursuance of the section of the charter above cited, the city engineer had power, in this instance, to designate where the surplus earth and quarry rubbish resulting from the work in May street should be deposited, and to provide for its disposition in his plans and specifications, if in doing so he exercised a fair and reasonable discretion and required nothing impracticable. The wisdom of these charter and ordinance provisions cannot be questioned in such a city as Kansas City, where, in its network of streets, hills are to be excavated, valleys and gulches to be filled up, when material existing in excess in one place can be conveniently taken to another where it is deficient. If the ordinance cited did not explicitly provide for such a disposition of surplus, it is by no means certain that such power would not reside in the discretion of the officers intrusted with the care and improvement of the streets. *City v. Seargeant*, 38 Conn. 50. *At least a wrong should appear* before courts are justified in declaring a contract void simply because it contains a provision for the disposition of surplus earth in some swamp or hollow in a different street close at hand. It may reasonably be assumed that in all cases where surplus earth is thus disposed of, the street receiving such surplus, as well as the property abutting it, is benefitted. Yet can it be maintained that by reason thereof all contracts must include and equally affect the property-owners fronting both streets, else the city engineer dare not dump surplus dirt into any other street in

the city? It could make no difference, if such was the rule of law, what the amount of surplus was on hand to be disposed of. The principle, if good in the one instance, must apply to all degrees of improvements effected in this way.

It is argued by counsel for defendants that the contract in this case provided that "the earth and quarry rubbish will be deposited on Ninth street, from Broadway to Washington streets, *until that part of Ninth street is brought to grade and full width.*" This, it is claimed, bound the contractor to grade Ninth street at point named at the expense of property-owners on May street, where the grading was done. Little or no complaint is made about the deposits elsewhere made. Did these words of the specifications and contract *require* work done and certain improvements made upon Ninth street? or did they simply furnish a convenient place where the contractor could dispose of surplus earth and quarry rubbish, and in so doing incidentally benefit Ninth street? We should, if possible, take a practical view of this matter, and as it is conceded that the work on May street was well done, at a fair price, and that defendants *have not been injured, but have received full benefit of plaintiff's work*, we should indulge all reasonable presumptions in favor of its legality. There was a reason why the city engineer should limit the deposit of earth and rubbish in Ninth street to its proper grade and width. A greater deposit than this would have created an obstruction to have been again removed. Suppose the depression in Ninth street at that point had only required a deposit of fifty cubic yards to fill it to grade, would not the same necessity have required him to limit the dirt thrown there to that amount and to have found depressions elsewhere for the remainder? The words of the specifications quoted may fairly be construed to have been a limitation upon the amount of surplus dirt to be dumped in Ninth street. Had the surplus from May street fallen short of this limit, I apprehend that no court would have compelled

the contractor to complete the filling of Ninth street under this contract.

It is true that Ninth street was greatly benefited by receiving the surplus from May street. Counsel for defendants at the trial below introduced in evidence section 31 of chapter 31 of the Revised Ordinances of Kansas City, which makes provision for the improvement of two streets under one contract and for a division of costs of the work between the different places and between property-owners fronting both streets. I admit that the situation of these streets with the benefits resulting to each would have presented an excellent opportunity for the making of such a contract had the property-owners on Ninth street petitioned for such improvement concurrently with the property-owners on May street. The Ninth street property-owners did not petition to have such work done. The common council, therefore, had no power to so contract the work as to apportion its cost between the property-owners on both streets.

The only defense presented by the defendants' answer is expressed in these words : " Had it been provided in said plans and specifications and requirements for doing the work specified in plaintiff's contract, as in the case of the rock excavated, that the contractor could do as he pleased with the earth excavated, the work in controversy could have been let much cheaper." While I hold that this allegation warranted the circuit court in overruling plaintiff's objection to the introduction of evidence to sustain the answer, I am of the opinion that the burden rested upon defendants to prove this allegation, and, after a careful study of the record in this case, I fail to find a single item of evidence which even tended to establish it. On the contrary, as hereinbefore stated, the defendants' own evidence showed that the work on May street was done at a reasonable price, even cheaper than could have been done by the parties themselves. As the case stands before us, we have the defendants whose street has been improved in accordance with the expressed wish of a majority of the

property-owners, in front feet, in compliance with the terms of the contract, at a fair price for the work done, who witnessed this outlay of labor and money on the part of the plaintiff without protest or objection, asking the court to relieve them of their obligation and thus deprive plaintiff of its expenditures and earnings, because their neighbors, *without damage or expense* to defendants, have received a benefit for which they cannot be compelled to pay.

Under the issue presented by this answer the true test of the validity of the contract is : Were the defendants injured or put to greater expense by reason of the stipulation in the contract? Did the dumping of the surplus dirt in Ninth street add to the cost of grading May street? Thus in *Moore v. City*, 98 N. Y. 396, in discussing this principle, the court said : "But no harm was done to the persons assessed by taking this soil [speaking of soil procured by the contractor outside of street in question]. The street was graded and improved and they had the full benefit of it * * * . It was much cheaper thus to take the soil than to protect the street by a retaining wall or in any other way, and thus the trespass, if one was committed, was really for the benefit of the persons assessed."

In the case of *Sheahan v. Owen*, 82 Mo. 458, it is said : "The work has been done by the plaintiff. No complaint is made that it was not done according to the contract, or that plaintiff is in any manner charged with notice of alleged irregularities in the proceedings of the council or of the acts of the city officials, and while there may have been some irregularities, the ordinances were substantially complied with by the city authorities and nothing done or omitted which could possibly have affected injuriously the interests of the defendant or other property-holders, and we are not inclined to turn a plaintiff out of court who has given his time and expended his money in the improvement of their property on mere technicalities which in no manner affect the substantial rights or interests of the parties." I find the same rule asserted in kindred cases. *City v. Long*,

31 Mo. 374; *Neenan v. Smith*, 60 Mo. 292; *Garrett v. City*, 25 Mo. 505; *Bissell v. Collins*, 28 Mich. 277.

The counsel for the defendants, while briefing at some length a question which is not properly before us on this appeal, has failed to cite a single authority in conflict with the above-named cases. I also have been unable to find such an authority. In accordance with the views herein expressed, I hold that the circuit court erred in refusing the instruction asked by the plaintiff and in giving the instruction asked by defendants.

Believing the decision of the court rendered by my associates in conflict with the principle announced in *Allen v. Rogers*, 20 Mo. App. 290, rendered by the St. Louis court of appeals, and in the case of *Sheehan v. Owen*, 82 Mo. 458, I think the case should be certified to the supreme court. It is so ordered.