McDonald & Co. v. Cash & Hainds.

R. L. McDONALD & Co., Appellants, v. CASH & HAINDS, Defendants; R. J. WHEELER, Interpleader, Respondent.

Kansas City Court of Appeals, April 27, 1891.

1. **Fraudulent Conveyances:** PARTNERSHIP AND INDIVIDUAL DEBT : EVIDENCE : SOLVENCY. C. & H. were partners in business and became embarrassed. Thereupon C. sold out to H. who assumed the partnership liabilities. H. then sold out to W. and took up as full payment the firm's note to W. as well as H.'s individual note to W. Plaintiffs afterward attached and seized the stock sold as aforesaid. W. interpleaded for the goods and plaintiffs' answer to the interplea was a general denial. On the trial there was evidence tending to show that the assets of the firm, good, bad and indifferent, were about equal to its indebtedness. H. testified he sold to W. because he was in an embarrassed condition. Upon the objection of the interpleader the court refused to permit H. to answer the question: "Could the indebtedness of the firm have been made at the time by process of law?" *Held,* error ; the solvency of the partnership was an issuable fact. The solvency required by the law to uphold a sale of the kind in question consists not only of the present ability to pay the firm debts, but such a condition of its means that payment can be enforced by law.

McDonald & Co. v. Cash & Hainds.

2. ———: ———: APPLICATION OF PARTNERSHIP AND INDIVIDUAL ASSETS: INSTRUCTIONS. Where a continuing partner, who has assumed the liabilities of the old firm, sells the firm property for his own individual debt, as well as some of the firm debts, on a trial between a firm creditor and purchaser of the continuing partner questioning the validity of the sale, an instruction telling the jury that the continuing partner had the right to make such sale for the purpose of paying any particular creditor or creditors to the exclusion of all other of said creditors, etc., is misleading, as it should have limited his right to the payment of partnership debts with partnership property; and the fact of dissolution did not authorize the continuing partner to appropriate the property acquired of the firm to the payment of his individual antecedently contracted debt to the exclusion of the partnership creditors, the right of such creditors being the same before as after the dissolution. And an instruction asserting the right of the purchaser to acquire the firm property of the continuing partner in payment of his individual debt without the assent of his former partner as against the creditors of the dissolved insolvent partnership is condemned. (*Sexton v. Alexander*, 95 Mo. 373, and *Nichols v. Ellis*, 98 Mo. 344, *distinguished*.) Certain other instructions set out in the opinion are approved as embodying proper principles.

3. **Trial Practice**: IMPROPER REMARKS OF COUNSEL IN CLOSING ARGUMENT. When counsel have attempted to make a case in their argument to the jury, which the law would not allow them to make in their tenders of evidence, such conduct, if objected to at the time and allowed to pass unrebuked, constitutes a ground for a new trial. In this case certain remarks of counsel in reference to a change of venue and the observation of the court on such conduct of counsel are reviewed and disapproved.

4. **Pleading**: EVIDENCE: WAIVER. Where the answer of plaintiff to an interplea is a general denial, and, at the trial, plaintiff without objection of interpleader offers evidence of fraud in the sale to interpleader, and both parties ask instructions on the question of fraud, *held*, the interpleader has waived his right to object that the question of fraud could not be raised under the general denial.

5. **Appeal**: BOND. Though the granting of the appeal and the filing and approval of the appeal bond were at different dates, yet if made at the same term should be considered together.

*Appeal from the Chariton Circuit Court.*—HON. G. D. BURGESS, Judge.

REVERSED AND REMANDED.

*Reed & James* and *A. W. Myers*, with *Crawley & Son*, for appellants.

(1) It was also error in the trial court to sustain the interpleader's objection to the question asked defendant Hainds, "Whether, at the time of his transaction with Wheeler about the stock of goods, the debts of the firm of Cash & Hainds could have been collected by process of law." The question presented in direct terms the very proposition which the supreme court declares to be the one and only test of solvency in this state; and one, too, which the trial court itself subsequently adopted, and announced to the jury in plaintiffs' instruction, numbered 5. *Eddy v. Baldwin*, 32 Mo. 369; *State ex rel. v. Koontz*, 83 Mo. 323. (2) The entire series of instructions given on behalf of the interpleader should have been refused for want of evidence upon which to base them. But waiving discussion of the first two—relating to the pretended sale and delivery of the goods to the interpleader—we insist upon it, that those numbered 3 and 4 are grossly unfair, and were designed for no other purpose than to confuse the issue and mislead the jury. *Phelps v. McNeeley*, 66 Mo. 554; *Hilliker v. Francisco*, 65 Mo. 598; *Ackley v. Staehlin*, 56 Mo. 558; *Flanagan v. Alexander*, 50 Mo. 50. (3) All the instructions asked on the part of the plaintiffs, and refused, should have been given, with the possible exception of number 10, which is partially included in number 1. Those, numbered 6, 7, 8 and 9, present, in plain and concise terms, the long-established and accepted doctrine in this class of cases. Their rejection was error. *Bank v. Brenneisen*, 97 Mo. 145; *Shackelford's Adm'r v. Clark*, 78 Mo. 491; *Phelps v. McNeeley*, 66 Mo. 554; *Hilliker v. Francisco*, 65 Mo. 598; *Ackley v. Staehlin*, 56 Mo. 558; *Patterson v. Seaton*, 28 N. W. Rep. (Iowa) 598. (4) Lastly, it is insisted, the statement made by counsel for interpleader to the jury, that plaintiffs "dare not try such a case

before twelve men in Linn county," was unwarranted, and calculated to prejudice the minds of the jury against the plaintiffs. The generalities of the trial judge, in response to the objections made at the time, were not calculated to remove the prejudice, or cure the error. *Gibson v. Zeibig,* 24 Mo. App. 65; *Holliday v. Jackson,* 21 Mo. App. 669; *Marble v. Walters,* 19 Mo. App. 134; *Woolfe v. Minnis,* 74 Ala. 386; *Baker v. Madison,* 62 Wis. 137; *Rochester v. Shaw,* 100 Ind. 268.

*W. H. Brownlee* and *A. W. Mullins,* for respondent.

(1) The appeal in this case should be dismissed and the cause stricken from the docket. The order with respect to the appeal was conditional, and did not grant the appeal. 1 R. S. 1889, sec. 2348, p. 580; *Randolph v. Manch,* 78 Mo. 468; *State v. Roscoe,* 93 Mo. 146, and cases there cited. (2) The plaintiffs' contention rests solely on the answer they filed to the interplea. But that answer is not even a general denial, unless the word "material" be eliminated and treated as mere surplusage. It does not even charge that plaintiffs were creditors of Cash & Hainds, the defendants in the case, and there is no allegation or charge whatever that the interpleader's, Wheeler, purchase of the property was fraudulent or without consideration. Therefore, the question of fraud on the part of Wheeler in the purchase of the goods does not arise. To be availed of, it must be pleaded. Bliss on Code Pleading, secs. 210, 211, 352; *Claflin v. Sommers,* 39 Mo. App. 419; *Meyberg v. Jacobs,* 40 Mo. App. 128; *Smith v. Sims,* 77 Mo. 269, 273–274; *Moore v. Ivers,* 83 Mo. 29, 34; 30 Cent. Law Jour. 357; *Van Raalte v. Harrington,* 101 Mo. 602; 32 Cent. Law Jour. 145, and note on pp. 147–148. The appellate court will only review such issues as are tendered by the pleadings, and whatever is essential to be proved must be alleged in the pleadings. *McConey v. Wallace,* 22 Mo. App. 377, 485;

*Russell v. Whitely*, 59 Mo. 196; *Kuhn v. Weil*, 73 Mo. 213; *Cummiskey v. Williams*, 20 Mo. App. 606. (3) The interpleader's third and fourth instructions presented the law correctly, and were properly given by the court. The debtor had the right to sell, and the creditor the right to buy, the goods, even if other creditors were excluded thereby; and, if Wheeler's purchase was in good faith for a fair consideration to protect himself and save himself from loss, then the title he acquired to the goods was and is valid and absolute. And so the court by these instructions directed the jury. *Nichols v. Ellis*, 98 Mo. 344; *Sexton v. Anderson*, 95 Mo. 373; *Holmes v. Braidwood*, 82 Mo. 610; *Shelley v. Boothe*, 73 Mo. 74; *Albert v. Besel*, 88 Mo. 150; *Forrester v. Moore*, 77 Mo. 651; *Singer v. Goldenburg*, 17 Mo. App. 549. (4) There was no error committed by the court in refusing to give plaintiffs' instructions, numbered from 6 to 12 inclusive. Whatever there was in any of them that was correct had already been given, and the jury were, by the four instructions given for the interpleader and the five given for plaintiffs, fully and properly instructed. The giving of a multitude of instructions could only tend to confound the jury. *Desberger v. Harrington*, 28 Mo. App. 632.

*Reed & James* and *A. W. Myers*, with *Crawley & Son*, in reply.

(1) The adjourned term of the circuit court was not, as respondent seems to contend, a new or independent term, but merely a continuation of the regular term. And, it appearing affirmatively from the record, that at the sitting in April, at the regular term, an appeal with leave to file bond and bill of exceptions on the first day of the adjourned term, to be held on the fourth day of the ensuing August, was granted, and that said bill of exceptions and appeal bond were accordingly filed and approved on the very day fixed by the court, the contention that the appeal has not been properly taken

becomes frivolous. The authorities cited by respondent, in support of such contention, do not apply. The orders relating to the granting of the appeal, and to the subsequent filing and approval of the appeal bond, though on different dates, were made at the same term, and are, therefore, to be considered together. *Fannon v. Plummer*, 30 Mo. App. 25; *State v. Bobb*, 39 Mo. App., *loc. cit.* 548. ( 2 ) After going to trial on the answer to the interplea, and framing instructions as though the issues were properly raised by the pleadings, it is now too late for the interpleader to complain of the use of the term " material," in plaintiff's general denial, or that the issue of "fraud" was not specially pleaded. *Smith v. Lindsey*, 89 Mo. 76; *Collins v. Trotter*, 81 Mo. 275; *Edmonson v. Phillips*, 73 Mo. 57; *Bank v. Rose*, 9 Mo. App. 399. Besides, the interpleader in an attachment case stands upon precisely the same footing as a plaintiff in replevin. 24 Mo. App. 599, and cases cited. He must recover, if at all, on the merits of his own claim to the property, and not upon the weakness of his adversary's. And, no matter what the rules of pleading in other jurisdictions may require of the party answering, it is the settled law of this state, in cases like the present, where the claimant of the property exposes his own fraud in his efforts to recover, that the general denial is a sufficient plea to warrant the submission of the question of fraud to the jury. *Tyler v. Larimore*, 19 Mo. App. 445; *Young v. Glasscock*, 79 Mo. 574; *Corby v. Weddle*, 57 Mo. 452; *Greenway v. James*, 34 Mo. 327.

SMITH, P. J.—The plaintiff brought suit against Cash & Hainds by attachment in the circuit court of Linn county. A certain stock of merchandise was seized under the writ as the property of the attachment defendants, Wheeler, interplea ler, claiming the attached property under a sale from defendant Hainds. The plaintiff

answered the interplea denying the interpleader's ownership of the property. A change of venue was awarded to the Chariton county circuit court. At the trial, which was by jury, there was evidence adduced, the tendency of which was to show that the attachment defendants in copartnership had engaged in merchandising at Bucklin, in Linn county. In January, 1888, the firm found itself in an embarrassed condition. It owed several thousand dollars which it was unable to pay. Among its creditors were the plaintiffs. The firm was indebted to the interpleader in the sum $1,200, which was secured by a deed of trust on certain real estate. Hainds was personally indebted to one Moore by note, on which interpleader was surety, for $1,000 and upwards. On January 27, 1888, Cash, one of the partners, entered into an agreement with his copartner, Hainds, whereby he sold and transferred to Hainds all his interest in the partnership assets, in consideration that Hainds should assume and pay all the copartnership debts, etc. On the thirty-first of January, 1888, Hainds went to Brookfield, where the interpleader lived, and there entered into an agreement with him whereby he sold to him the said stock of merchandise, in consideration whereof the interpleader assumed to pay Hainds' individual note to Moore, already mentioned, and turned over to Hainds the note on Cash & Hainds for $1,200, the sum of the two notes amounting to $2,640, which, the bill of sale recites, was "received in full payment and satisfaction for said goods." On March 2, following the sale to interpleader, the attachment levy was made on the stock of merchandise. There was further evidence tending to show that there were unsettled accounts due the firm amounting to about $4,000, one-half of which might be collected by law, the other half being due by insolvent persons. There was also evidence offered tending to show that the entire assets of the firm, "good, bad and indifferent," were nearly, or quite, equal in amount to the firm

indebtedness. Hainds testified that the reason he made the transfer of the store to interpleader was that he was in "an embarrassed condition." The defendant Hainds, while testifying, was asked this question: " Could the indebtedness that the firm of Cash & Hainds owed have been made at the time by process of law?" Upon the objection of the interpleader the court refused to permit the defendant witness to answer the question. There was much other evidence introduced covering a wide range, but which, for the purpose of understanding the grounds upon which the judgment is assailed, it is unnecessary to here set forth. There were seventeen instructions given and refused, which, owing to their great number and length, only such as are specially challenged will be here set forth. The third and fourth instructions given for the interpleader were as follows:

"3. The court instructs the jury that, notwith-standing they may believe from the evidence that, at the time of the sale of the stock of goods by Hainds to the interpleader, Wheeler, the firm of Cash & Hainds was largely indebted to various wholesale merchants on account of the purchase of the goods, or some of them, then on hand, yet the court instructs the jury that the fact that said firm was so indebted did not preclude said Hainds from selling said goods, either at retail or all together at a single sale to one purchaser. Said Hainds had the lawful right to make such sale for the purpose of paying any particular creditor, or creditors, to the exclusion of all the other of said creditors, and if said Wheeler purchased said goods in good faith, and for a fair and valuable consideration, then the jury should find for the interpleader.

"4. The court instructs the jury that, although the firm of Cash & Hainds and the said Hainds, the successor of said firm, may have been in embarrassed circumstances financially, and that Wheeler, the inter-pleader, knew that such was their condition, and that with such knowledge he purchased of said Hainds, the

successor of said firm of Cash & Hainds, the goods and merchandise in question, and that he made such purchase in good faith for the purpose of saving himself from loss on account of the indebtedness of said firm to him, and his liability as surety on the note given by said Hainds to Moore for $1,000, yet such knowledge and purpose on the part of said Wheeler did not make his purchase of said goods and merchandise invalid or fraudulent.''

The following instructions, asked by the plaintiffs, were refused :

"6. The court instructs the jury that, if they believe from the evidence that the firm of Cash & Hainds was insolvent at the time of its dissolution and Cash's retirement from the firm, and that the partnership assets were turned over to Hainds, with the understanding that Hainds should pay the debts of said firm, and that a part of the consideration of the sale from Hainds to Wheeler was the canceling of an individual debt of Hainds, amounting to about $1,080, then it is wholly immaterial in this case whether the interpleader, at the time of his purchase, had knowledge of the terms of the dissolution of said firm or not, and the jury will find for the plaintiffs, R. L. McDonald & Co.

"7. The court instructs the jury that, in the distribution of partnership assets, partnership creditors have a preference over individual creditors, and have a right to be first paid out of the firm assets, to the exclusion of individual creditors ; and that, when a partnership is dissolved, and one member thereof retires from the firm, with an agreement between the members of the firm that the partner who takes the firm assets shall pay the firm indebtedness, the rights of creditors of the firm as to the firm assets are the same as though there had been no dissolution of the firm ; and, if the jury believe from the evidence that the defendant Cash sold all his interest in the partnership of Cash & Hainds to his codefendant Hainds, with the understanding between

said Hainds and said Cash that Hainds should pay off the indebtedness of said firm, and further believe that plaintiffs, R. L. McDonald & Co., were, prior to and at the time of the sale from Cash to Hainds, and of the sale from Hainds to Wheeler, creditors of the firm of Cash & Hainds, then the said plaintiffs had a right to be first paid out of the said assets of said firm, to the exclusion of any indebtedness owing by said Hainds, individually, to said Wheeler; and such right of the plaintiffs was not impaired any more by an application of the firm assets, after its dissolution, by said Hainds, to the payment of his own individual debts, than if such application had been made before the dissolution.

"8. If the jury find from the evidence that the consideration paid by Wheeler to Hainds for the stock of goods was, in part, the individual debt of Hainds; that the said Hainds, in his purchase from his partner, Cash, agreed to pay the debts of 'Cash & Hainds;' that, at the time of Wheeler's purchase, Wheeler knew that the firm of 'Cash & Hainds' was in embarrassed and insolvent circumstances; and, if the jury further find that said 'Cash & Hainds' were, at the time of said sale, indebted to McDonald & Co., plaintiffs in the attachment suit, then the interpleader, Wheeler, cannot recover in this case, unless the jury shall further find that the assets of 'Cash & Hainds' were, at the time of said sale to Wheeler, sufficient to pay the partnership debts of 'Cash & Hainds,' independent of the stock of goods sold to Wheeler.

"9. The fact that the firm of Cash & Hainds was honestly indebted to R. J. Wheeler, and the further fact that said Wheeler gave up the note of 'Cash & Hainds' when he entered into the transaction about the stock of goods, will not avail said Wheeler or entitle him to recover in this action, if he knew that the firm of Cash & Hainds was insolvent, and that Hainds had assumed the debts of the firm, and was trying to dispose

of the goods, to hinder, or delay, or defraud the creditors of said firm."

The verdict of the jury was for the interpleader.

After the usual motion to set the same aside was overruled, judgment was rendered, and from which the plaintiffs have appealed.

I.   We think the court committed reversible error by its refusal to permit the attachment defendant Hainds, while on the witness stand, to answer the question propounded to him by the plaintiff.   As to whether, at the time of the sale of the store by Hainds to the interpleader, the debts of the defendant could have been made out of their partnership assets by process of law, was a material inquiry.   The solvency of the partnership was an issuable fact.   The solvency required by the law, to uphold a sale of the kind in question, consists not only of the present ability in the debtor to pay his debts, but is such a condition of his means that payment can be enforced by law.   *Eddy v. Baldwin*, 32 Mo. 360 ; *State ex rel. v. Koontz*, 83 Mo. 323.

Testing the action of the court by this rule, it is plain that it erred in refusing to permit the plaintiffs to prove, by the witness, this very material fact, which was, presumably, within his knowledge.

The interpleader's third instruction, it is contended by plaintiffs, is erroneous in that it told the jury that Hainds had " the lawful right to make such sale for the purpose of paying any particular creditor or creditors to the exclusion of all other of said creditors," etc.   It is well calculated to mislead the mind of the jury.   The jury were justified in concluding from its language that the defendant Hainds could appropriate the partnership property to the payment of his individual debt to the exclusion of the partnership debts.   It should have clearly and explicitly directed the jury that the defendant Hainds could dispose of the property in good faith, in payment and satisfaction of the partnership debts. But instead of this it declared that Hainds could pay

any debt, whether individual or partnership, with the partnership property. It should have limited Hainds' "lawful right" to the payment of the partnership debts with the partnership property. It is the well-settled law of this state that one partner has no authority or power, without the consent of his copartners, to appropriate the assets of the partnership to the payment of his individual indebtedness. While a partner can dispose of the property by a *bona fide* sale, he cannot appropriate it, without the consent of his copartners, to the payment of his individual debts, either with or without the knowledge of the creditor that such property was partnership property. In the distribution of partnership assets, partnership creditors have a preference over individual creditors. *Phelps v. McNeeley,* 66 Mo. 554; *Hilliker v. Francisco,* 65 Mo. 598 : *Ackley v. Staehlin,* 56 Mo. 558 ; *Flanagan v. Alexander,* 50 Mo. 50 ; *First National Bank v. Brenneisen,* 97 Mo. 145 ; *Shackelford, Adm'r, v. Clark,* 78 Mo. 491. There is nothing in the case of *Sexton v. Alexander,* 95 Mo. 373, that in the least supports the theory of the instruction under review. There all the partners joined in giving the authority to pay the debts of one of them. The requisite assent of all the partners to the appropriation of the partnership assets to the payment of the individual debt was given. The case is easily distinguishable, in its essential facts, from the case at bar. It can have no application to a case whose facts are like this. Besides, it reaffirms the rulings of the earlier cases which we have cited, and which are applicable here.

The mere circumstance that the partnership of Cash & Hainds was dissolved, and that Cash retired after selling his interest to Hainds on the condition that he should pay the debts of the copartnership, did not authorize Hainds to appropriate the property thus acquired to the payment of his individual antecedently contracted debts to the exclusion of the copartnership creditors. The right of partnership creditors to be

first paid out of the partnership assets, to the exclusion of individual creditors, is the same after as before the dissolution.    The dissolution in no respect impairs this right.    *Phelps v. McNeeley, supra; Tenney v. Johnson,* 43 N. H. 144.

It results from what has been said that the interpleader's said third instruction was vicious, in that it did not restrict the right of the defendant Hainds in making sale of the partnership goods for the purpose of paying creditors alone to *partnership creditors*, instead of to "any particular creditor."

III.   The interpleader's fourth instruction, in its enunciation, is obnoxious to the governing principles to which attention is called in the preceding paragraph. It distinctly asserts the right of the interpleader to acquire the title of the partnership property by purchase of Hainds in payment of his individual debt, without the assent of Cash, the other partner, as against the creditors of the partnership already dissolved, and of whose insolvency there was much evidence adduced. We do not think these two instructions of the interpleader are in exact harmony with numbers 2 and 3 given for the plaintiffs.    The latter do not recognize the authority of Hainds to appropriate the partnership property to the satisfaction of his individual debt, without the assent of Cash, the outgoing partner, while the former in effect do.    Of course an insolvent debtor has the right to pay certain creditors to the exclusion of others where there is no fraud connected with his action in that particular.    *Nichols v. Ellis*, 98 Mo. 344.

The case here is where one of the members of a dissolved and insolvent partnership, who has been put in possession of the partnership assets by the outgoing partner, under an agreement to appropriate such assets in payment of the partnership debts, has been guilty of a misappropriation, has appropriated partnership property in payment of his individual debt.    The two cases are wholly dissimilar in fact and principle. The

principle of the case just cited, as well as the other cases in line with it cited by interpleader, have no application to this case.

IV.    The instructions refused for the plaintiffs, numbered from 6 to 9, should have been given. The principles they embody find countenance and support in *Ackley v. Staehlin*, 56 Mo. 558, and the other cases cited in connection with it. The ground of principle, upon which we have been led to condemn the interpleader's instructions, may be appropriately invoked in support of the correctness of the theory advanced by the plaintiff's instructions.

V.    It appears by the bill of exceptions that the counsel for interpleader, in his closing argument before the jury, stated that "they ( the plaintiffs ) come here to this court away from Linn county, at their own instance, and dare not try such a case before twelve men in Linn county. They had to swear under oath that they could not do that." On objection being made to this statement by the plaintiffs' counsel, the court remarked: " You gentlemen have not confined yourselves to the record, at all, on either side. And when you gentlemen on the other side go outside of the case, you may expect them to follow. Now, so far as the change of venue is concerned, the case was brought that way— that is perfectly legitimate. But that part of your speech, Major Mullins, in regard to the parties being afraid to try the case in Linn county, is, *perhaps*, outside of the record and outside of the case. *But when lawyers go outside of the case on the other side, how can they expect to see others keep inside the case?* This rule is not observed by a single attorney that I know of."

These remarks and rulings of the court we cannot approve.    It was proper to inform the jury that the case came from Linn county by change of venue, but it was highly improper for counsel to tell the jury, and especially so in the closing argument, that the plaintiffs

McDonald & Co. v. Cash & Hainds.

had taken the change of venue. This was not a matter for the consideration of the jury. At whose instance the case was removed to Chariton county, was no concern of the jury. This fact was not in evidence, and a reference to it by counsel could have no other effect than to create in the minds of the jury an unfavorable impression of the plaintiffs' side of the case, and to mislead the jury as to the issues they were called upon to decide. Counsel, in stating this immaterial matter, and in commenting thereon, exceeded the boundary lines of legitimate argument. The court should have promptly admonished him to confine himself within the issues made by the pleadings and evidence. The proprieties of the administration of justice requires this; a different practice cannot be tolerated. Nor can we approve the further rulings of the court to the effect that the remarks of the interpleader's counsel were rendered permissible by reason of plaintiffs' counsel going outside of the record. If the plaintiffs' counsel exceeded the limits of legitimate argument, this circumstance did not justify the improper remarks of interpleader's counsel. The rule is well established that, when counsel have attempted to make a case in their argument to the jury, which the law would not allow them to make in their tenders of evidence, such conduct, if objected to at the time and allowed to pass unrebuked, constitutes a ground for a new trial. *Gibson v. Ziebig*, 24 Mo. App. 65; *Miller v. Dunlap*, 22 Mo. App. 97; *Marble v. Walters*, 19 Mo. App. 134; *Reeder v. Studt*, 12 Mo. App. 566.

" We think the court erred in its refusal to rebuke, in the presence of the jury, the impropriety of interpleader's counsel after its attention was called thereto by the plaintiffs' objection.

VI. Whether or not the question of fraud could be raised under the answer of the plaintiffs which was a general denial, it is not necessary to consider. The evidence tending to establish fraud was admitted at the

trial without objection, as if competent under the general denial, or as if specially pleaded. This being so, instructions based upon the issue made upon the trial by the conduct of the parties were properly given. The question of pleading was clearly waived by this failure to object to the evidence, and plaintiffs had a right to have the case put to the jury on the theory on which, by consent of interpleader, it had been tried; that is, that the defense was not new matter, and was sufficiently set up by the general denial. *Stewart v. Goodrich*, 9 Mo. App. 125. Besides, the question of fraud was submitted by the interpleader's instructions, as well as by those of the plaintiffs, so that, if it was error to submit that question under the pleadings, such error was waived by interpleader. It was an error which interpleader adopted as his own, and cannot now complain of it. *Davis v. Brown*, 67 Mo. 313; *McGonigle v. Daugherty*, 71 Mo. 259; *Holmes v. Braidwood*, 82 Mo. 610; *Thorpe v. Railroad*, 89 Mo. 650; *Soldanels v. Railroad*, 23 Mo. App. 516; *Crutchfield v. Railroad*, 64 Mo. 250.

VII. We think the orders relating to the granting of the appeal and the subsequent filing and approval of the appeal bond, though at different dates, were made at the same term, and should be considered together. The appeal, we must hold, was properly taken. *State v. Bobb*, 39 Mo. App. 548; *Fannon v. Plumer*, 30 Mo. App. 25. It follows from what has been stated that the judgment of the circuit court will be reversed, and the cause remanded. All concur.