JAMES EWART, Interpleader and Appellant, v. KATE TOOTLE & Co., Respondents.

Kansas City Court of Appeals, May 30, 1892.

1. **Practice, Appellate:** INSTRUCTION: ABSTRACT. Where the court may have refused an instruction for the reason that the evidence was insufficient to authorize the finding of some of the facts embraced within its hypotheses, and the evidence is not all set out in the abstract, the appellate court cannot review the finding in that respect.

2. **Partnership:** MORTGAGE OF PARTNER'S INTEREST: ATTACHING CREDITOR. A partner's mortgage of his one-half of the partnership property to secure his own debt without the consent of his copartner would pass no interest to the mortgagee except what might remain

over to the mortgagor after the payment of the partnership debt as his share; and would pass no title as against partnership creditors, and such property would still belong to the partnership and be liable to attachment by its creditors.

3. Practice, Appellate: ABSTRACT: PRESUMPTION. Where the abstract of the evidence is meager the appellate court must indulge every presumption in favor of the correctness of the finding of the trial court.

*Appeal from the DeKalb Circuit Court.*—HON. CHAS. H. GOODMAN, Judge.

AFFIRMED.

*S. G. Loring,* for appellant.

(1) The court erred in refusing the declaration of law prayed for by the plaintiff. The conditions of the mortgage were immediately broken upon its execution; a forfeiture took place when Ewart took possession of said stock of goods, on the eleventh day of January, 1888. *Huggans v. Fryer,* 1 Lans. (N. Y.) 276; Jones on Chattel Mortgages [2 Ed.] sec. 557; *Jackson v. Cunningham,* 28 Mo. App. 354; *Barnett v. Timberlake,* 57 Mo. 499; *Sheble v. Curdt,* 56 Mo. 437; *Robinson v. Campbell,* 8 Mo. 366, 615; *King v. Bailey,* 8 Mo. 240; *Lacy v. Gibony,* 36 Mo. 320. (2) Again there is no evidence in the case, that on either the eleventh or the twelfth day of January, 1888, the firm of Meek & Atterbury was insolvent. The ordinary creditors of a firm have no lien on the property of the firm before obtaining judgment and execution, so as to be able to prevent it from parting with that property to whomsoever it chooses. 1 Lindley on Partnership [Ewell's 2 Ed.] 335. But can only be subrogated to the lien of the partners, and are, therefore, without remedy when such lien has been waived by them. *Case v. Beauregard,* 99 U. S. Rep. 119; 1 Lindley on Partnership, *supra; Sexton v. Anderson,* 95 Mo. 381.

*Reed, James & Randolph,* for respondents.

(1) Each partner, being individually liable for the firm debts, has the right to have partnership property applied to payment of partnership debts before payment of the individual debts of the other member or members of the partnership; and, so long as one member of a partnership does not waive this right, a partnership creditor has the right to be paid out of the partnership assets to the exclusion of the creditors of an individual member of the firm. This right of the partnership creditor is a *quasi*-equitable lien upon the partnership assets. *Shackleford's Adm'r v. Clark,* 78 Mo. 492, 493; *Bank v. Brenneisen,* 97 Mo. 151; *Reyburn v. Mitchell,* 16 S. W. Rep. 592; *McDonald & Co. v. Cash & Hainds,* 45 Mo. App. 66. (2) The right of a partner to have partnership assets applied to paying the firm debts can only be waived when done in good faith, and not in fraud of firm creditors. *Reyburn v. Mitchell, supra.* (3) All the evidence before the lower court sitting as a jury, not being before this court, every fact necessary to support the judgment of the lower court will be presumed by this court to have been found by the lower court.

SMITH, P. J.—Kate Tootle & Co., an incorporated mercantile company, brought their action by attachment against Meek & Atterbury, a mercantile partnership, and caused a writ of attachment to be levied upon a certain stock of goods as the property of the partnership. In this action Ewart filed an interplea claiming the absolute ownership of the attached goods. The attaching creditors answered, denying the interpleader's claim.

The interpleader introduced as the basis of his claim a chattel mortgage dated January 11, 1888, exe-

cuted by Meek to him, whereby the latter conveyed to the former an undivided one-half of said stock of goods for the purpose of securing a promissory note made by Meek to the interpleader for $2,500, which was dated October 23, 1886. The interpleader in his brief states that he was in possession of the goods when the attachment was levied on January 13, 1888, but this is controverted by the attaching creditors; but the evidence is not preserved, or, if so, it is not set forth in the abstract.

It appears that Meek & Atterbury, in September, 1887, became indebted to the attaching creditors in the sum of $310.15 for merchandise sold by the latter to the former. It further appears that on the same day that Meek executed the mortgage to interpleader, that the other partner, Atterbury, executed a mortgage to one Low to secure a debt due by said Atterbury to him for $2,162.07. It is further stated that there was evidence introduced tending to show that the said stock of merchandise on the day before the levy of the attachment invoiced $6,100, and that the partnership debts amounted to about $4,500. It further appears that Atterbury, ten days before the attachment was levied, exchanged his farm for a stock of goods in Kansas, which latter was conveyed to his wife.

Neither the interpleader nor the attaching creditors have set forth all the evidence in their respective abstracts. The interpleader has contented himself, after setting forth *in hæc verba* the mortgages, the petition and levy of the sheriff in the attachment, and what the evidence conduced to prove,—in other words, his conclusion as to its effect. This, of course, is wholly insufficient under the numerous decisions that have been made by us.

The attaching creditor asked no instructions. The interpleader asked and the court refused to declare the

law to be "if it found from the evidence that on and prior to the thirteenth day of September, 1883, one Eli Dixon and George Lipscomb were each the owner of an individual one-half of a stock of goods in the city of Maysville, Missouri, and that on or about said day Wm. L. Meek, one of the defendants in the case of Tootle, Hosea & Co. *v.* Wm. L. Meek and Green B. Atterbury, purchased of said Dixon his undivided one-half of said stock of goods, for the sum of about $4,500, and executed and delivered to said Dixon his (Meek's) notes for a part of the purchase price thereof, and said notes were afterwards, for a valuable consideration, sold and indorsed to plaintiff (Ewart), and that the note in proof, calling upon its face for $2,538.83, with ten-per-cent. interest, bearing the date of October 23, 1886, and executed by said Meek *et al.*, to this plaintiff, is a renewal of said notes executed by said Meek to said Dixon for the purchase price of said undivided one-half of said stock of goods purchased of said Dixon, as aforesaid; that afterwards, on the eleventh day of January, 1888, the said Meek, for the purpose of securing said note last aforesaid, executed and delivered to this plaintiff, the mortgage in proof upon his said undivided one-half of said stock of goods, and that this plaintiff took possession of said undivided one-half of said stock of goods under said mortgage, and that afterwards, on the thirteenth day of January, 1888, these defendants commenced a suit by attachment against the said Meek & Atterbury in the DeKalb county circuit court, and caused the sheriff of said county to levy the writ of attachment issued in the case last aforesaid, upon the goods, wares and merchandise mentioned in plaintiff's interplea, and that said goods, wares and merchandise were a part of said undivided one-half of said stock of goods mortgaged by said Meek to this plaintiff, then, at the time of the said levy

of said writ of attachment, the said Meek had no attachable interest in said undivided one-half of said stock of goods, and the finding of the court must be for the plaintiff in this case." The court may have refused this instruction for the reason that the evidence was insufficient to authorize the finding of some of the facts embraced within its hypotheses. As the evidence is not all before us we cannot revise its findings in that respect.

But, even if the facts should have been found according to the assumption of the instruction, the conclusion of law which the court was asked to deduce was a palpable *non sequitur*. If Meek purchased of Dixon, of the old firm of Dixon & Lipscomb, his interest thereon and gave his note therefor which was afterwards assigned to interpleader, this would not make the latter a creditor of the firm of Meek & Atterbury—he was but the individual creditor of Meek. The contention in this case is between the attachment creditors of the firm of Meek & Atterbury and the interpleader who is an individual creditor of Meek.

By the mortgage of an undivided one-half of the partnership property of Meek to interpleader to secure his own debt without the consent of Atterbury, the latter would take no interest therein except what might have remained over to Meek after the payment of the partnership debts as his share. While one partner can dispose of the property by a *bona fide* sale, he cannot appropriate it without the consent of his copartner to the payment of his individual debts either with or without the knowledge of the creditor that such property is partnership property. In the distribution of partnership assets, partnership creditors have a preference over individual creditors. *McDonald v. Cash & Hainds*, 45 Mo. App. 66; *Phelps v. McNeely*, 66 Mo. 554; *Flanagan v. Alexander*, 50 Mo. 50; *Ackley v. Staehlin*,

56 Mo. 561. The law does not invest a partner in his quality as agent of the copartnership with the implied authority to dispose of the partnership property to pay his individual debt. Such disposition will pass no title as against the creditors of the partnership. The partnership in such case could assert its claim to property in the hands of such individual creditor. *Flanagan v. Alexander, supra.* It, still being the property of the partnership, would be liable to seizure under process of attachment by its creditors. The element of partnership consent is ignored by the instruction, for which, if for nothing else, it must be condemned as bad.

The evidence as to the insolvency of the partnership is not, as already stated, set forth in the abstract further than that interpleader introduced evidence tending to show the amount of the invoice of the stock of goods, and about the amount of the debts. It is not shown that this was all the evidence adduced in relation to the question of the insolvency of the partnership. We cannot say in view even of the evidence presented by the record before us that the partnership was not only able to pay its debts, but was in such condition of its means that payment could be enforced by process of law. Certainly it is not to be questioned that, if the conveyances of the entire partnership assets to interpleader and Low are upheld, then there can be nothing left for the partnership creditors.

In view of the meager abstract of the evidence, we must indulge every presumption in favor of the correctness of the finding of the trial court. *Pembroke v. Railroad,* 30 Mo. App. 62; *Hausmann v. Hope,* 20 Mo. App. 193; *Churchman v. Kansas City,* 49 Mo. App. 366.

It follows that the judgment will be affirmed. All concur.