## BLAKE v. SARGENT.

(District Court, D. Missouri, S. D.   March 14, 1907.)

### No. 62.

PARTNERSHIP—FIRM AND INDIVIDUAL CREDITORS—PAYMENT FROM FIRM ASSETS.
When a firm and the members thereof were insolvent one of them made a sale of his interest to the other for a nominal sum and the assumption by the purchaser of the firm debts. Thereupon the purchaser used funds so received to pay an individual creditor. *Held* that, the sale not being in good faith, the funds so paid could be recovered for the firm creditors.

In Equity.

Karnes, New & Krauthoff, for complainant.
A. E. Spencer and Willard P. Hall, for defendant.

PHILIPS, District Judge. In the early part of 1903 Samuel W. King and James E. Maxwell formed a partnership under the firm name of King & Maxwell Paint & Glass Company, and thereafter conducted such business at Kansas City, Mo., until June 11, 1904, at which time the concern was insolvent, owing debts to the amount of about $29,000. In Maxwell's testimony, on examination before the referee in bankruptcy, he said that the total amount of his assets was $13,000. He afterwards scheduled them at about $18,000. About the 20th day of June, 1904, on petition of creditors of the concern, a receiver was appointed to take charge of the assets in a proceeding instituted in the state circuit court. On the 23d day of June, 1904, a petition in involuntary bankruptcy was filed against them as partners and individuals in the United States District Court for the Western Division of the Western District of Missouri, on which they were, on the 1st day of August, 1904, adjudged bankrupts as partners and as individuals. Later, suit was brought against the defendant, Laura A. Sargent, in the United States District Court for the Southwestern Division, Judicial District of Missouri, by Daniel F. Blake, as trustee in bankruptcy of the estate, to recover from her the sum of $3,738, alleged to have been received by her as an individual creditor of said Maxwell, which he paid her out of the funds of the partnership estate without the knowledge of

the other partner, Samuel W. King. Evidence has been taken on the issues joined, and the cause has been argued and submitted to the court.

The law is well settled that one partner cannot appropriate partnership property to the payment of his individual debts without the direct consent of the other partner. This, for the reason that as between the partners the equity of the relation demands that the partnership assets shall be first applied to the payment of partnership liabilities, and the interest of a partner in the partnership estate only attaches after dissolution of the partnership in the residuum after the payment and satisfaction of partnership liabilities. One partner, therefore, has no authority, sua sponte, to dispose of partnership property for his individual benefit by way of paying his individual debts. Hilliker v. Francisco, 65 Mo. 598; Flanagan v. Alexander, 50 Mo. 50, 51; Caldwell v. Scott, 54 N. H. 414. Equally well settled is it that one partner cannot appropriate such property "without the consent of his copartner to the payment of his individual debts, either with or without the knowledge of the creditor that such property belonged to the partnership." Rogers v. Batchelor, 12 Pet. 221, 9 L. Ed. 1063; Caldwell v. Scott, supra; Ackley v. Staehlin, 56 Mo. 558, 561; Price v. Hunt, 59 Mo. 258, 263.

These general rules are not controverted by the learned counsel for the defendant, but their contention is that at the time of the payments made by Maxwell to Mrs. Sargent, who is his mother, the copartnership of King & Maxwell had been dissolved by mutual consent, and the entire interest of the partnership property of King had been transferred to Maxwell, whereby the latter became the sole owner of the partnership estate, and had the right to transfer the same to Mrs. Sargent in payment of his individual debt. The proof shows that on the 11th day of June, 1904, said King did, in form, make a bill of sale to all his interest in the partnership property to said Maxwell in consideration of $234.34, claimed to have been paid to him by said Maxwell with the understanding and agreement that said Maxwell assumed the payment of all outstanding debts and obligations of said partnership, and that he (Maxwell) should have the right to continue and operate said business under said firm name for one year thereafter. No public notice was given of this arrangement, and the business thereafter continued in the name of King & Maxwell Paint & Glass Company until the time of the appointment of a receiver as aforesaid by the state court. After that, on the 21st day of June, 1904, the attorney of said Maxwell, of his own motion, put said contract of sale to record. On the day of the execution of said contract of sale said Maxwell drew a check in the name of the firm in favor of the partnership on the First National Bank of Kansas City for the sum of $2,500, out of a fund theretofore deposited to the credit of the partnership in said bank, and sent the same to his mother, the defendant, Mrs. Sargent, as a part payment on a note for $3,500 then held by her against said Maxwell; and on the 14th day of June thereafter said Maxwell drew another check in the same way on said bank in favor of said concern for the sum of $1,231.90, and transmitted the same to his mother, the defendant, in satisfaction of said note.

The proposition of law asserted by defendant's counsel in the abstract is correct. But the effects of a partnership are vested, in solido, in the partnership, and not in the constituent members in severalty. The partnership property is primarily liable for the payment of partnership debts. While this preferential right of such creditors is recognized in the marshaling and distribution of the assets among the creditors it does not constitute a lien in law upon the assets; but it exists in equity, inter se the partners, which a court of equity works out through the partners in favor of the society creditors. Level v. Farris, 24 Mo. App. 461, approved in Hundley v. Farris, 103 Mo. 79, 86, 15 S. W. 312, 12 L. R. A. 254, 23 Am. St. Rep. 863.

So where the partnership ends by the retirement of a member and the transfer of his interest in the partnership property to the other partner, the latter becomes entitled, in his own right, to the entire estate, and may apply the same to the payment of his individual debts, to the exclusion of partnership creditors who have not theretofore fastened, by appropriate proceeding, their equitable preferential rights upon the property. Case v. Beauregard, 99 U. S. 100, 25 L. Ed. 370; Huiskamp v. Moline Wagon Company, 121 U. S. 310, 7 Sup. Ct. 899, 30 L. Ed. 971; Seger v. Thomas Bros., 107 Mo. 635, 18 S W. 33; Reyburn v. Mitchell, 106 Mo. 365, 16 S. W. 592, 27 Am. St. Rep. 350.

It is to be observed and kept in mind, however, in applying this general doctrine, that the text-writers and courts predicate it upon the condition that the dissolution and transfer between the partners must be bona fide as respects the partnership creditors whose preferential right is thus sought to be displaced and lost. Story on Partnership, § 361, says:

"The joint creditors of the partnership, while all the partners are living and solvent, can enforce no claim against the joint effects or the separate effects of the partners, except by a common action at law. It is only in cases where there is a dissolution by the death or bankruptcy of one partner that the right of the joint creditors can attach, as a quasi lien upon the partnership effects, as a derivative, subordinate right, under and through the lien and equity of the partners."

So in Huiskamp v. Moline Wagon Company, supra, the court said:

"It was only necessary that the disposition of the property should have been bona fide on the part of both parties, and without any intent to hinder or delay the plaintiff."

This exception is thus stated in Am. & Eng. Enc. Law, vol. 14, p. 238 (2d Ed.):

"The only limitation upon the partners' right to so deal with the property is that the right should be exercised bona fide and without any intent to defraud the creditors of the firm, or to deprive them of their legal or equitable claims upon the joint estate in case of insolvency.

"If one partner transfers his interest in the joint property to a copartner with intent to deprive the firm creditors of its proper application to the payment of the joint debts, such a conveyance is fraudulent and will not defeat the right of the joint creditors to follow the partnership effects and have them appropriated to the payment of the debts of the firm.

"If the firm and all its members are insolvent, and the insolvency is patent to all the members, a fraudulent intent will generally be presumed as a matter of law.

· "But if the firm is solvent, the conveyance is not per se invalid, and can only be avoided by proof of the actual fraudulent design."

In Arnold v. Hagerman, 45 N. J. Eq. 186, 198, 199, 17 Atl. 93, 96, 14 Am. St. Rep. 712, Dixon, J., pertinently observed:

"The case would have been entirely different if copartners who were insolvent and unable to pay the debts of the firm, either out of their copartnership effects or of their individual property, had made an assignment of the property of both to pay the individual debts of one of the copartners only. For an insolvent copartner who was unable to pay the debts which the firm owed *would be guilty of a fraud upon the joint creditors* if he authorized his share of the property of the firm to be applied to the payment of a debt for which neither he nor his property was liable, at law or in equity. So in Vandoren v. Stickle, 24 N. J. Eq. 331, it was declared that a voluntary transfer by a firm of notes owned by the partnership to the wife of one of the partners was fraudulent as to partnership creditors, and the notes in the hands · of the wife were decreed to be partnership assets. * * * Partnership creditors, in equity, have an inherent priority of claim upon partnership property over individual creditors, and a transfer of partnership property by one partner, with the consent of the other partners, or of all the partners, to pay individual debts, is fraudulent and void as to firm creditors, unless the firm was then solvent and had sufficient property remaining to pay the partnership debts."

Further on, quite pertinently to the case at bar, the court said:

"The consideration nominally given by Farr to Hagerman and Fielder was the surrender of their notes, and his covenant to indemnify them against firm creditors. * * * Farr's covenant to indemnify does not constitute a valuable consideration, since he may be relieved therefrom on the total failure of the transfer for which it was made."

See, also, Howe v. Lawrence, 9 Cush. 553, 57 Am. Dec. 68.     .
In Flack v. Charron, 29 Md. 311, it is said that:

"While the joint creditors have no right to impeach or call into question the bona fide sales or transfers of the partnership property, it has been uniformly held that it was necessary to the validity of such sales or transfers, as against the creditors, that they should be fair and bona fide; and, where they have been found otherwise, they have been declared inoperative as against creditors."

Judge Thompson, in Re Estate of Edwards & Wigginton, 47 Mo. App. 312, said:

"It is well settled that partners cannot defeat the operation of this salutary rule by making, while insolvent or in the preparation of insolvency, convey- · ances of their firm assets to secure individual creditors, although both the partners may concur in so doing."

In Earle v. Art Library Pub. Co. (C. C.) 95 Fed. 544, the syllabus is:

"After a firm is actually insolvent, a partner cannot, by a transfer of his interest to his copartner, constitute the assets of the firm the individual property of the latter as against the partnership creditors."

The rule in this respect is appositely stated in Darby & Co. v. Gilligan, 33 W. Va. 246, 249, 10 S. E. 400, 401, 6 L. R. A. 740, as follows:

"If the firm is insolvent, or on the eve of insolvency, and both of the partners are insolvent, a purchase by one partner of the interest of the other ·in consideration of the former's assumption of all the debts of the firm, will be regarded as a purchase upon a consideration which is of no value whatever, and, no equivalent having been given, the transfer is in effect voluntary, and

its only effect, if sustained, would be to hinder partnership creditors, and hence is deemed ineffectual to convert the joint property into separate property as against the firm creditors."

See, also, Till's Case, 3 Neb. 261; Roop v. Herron, 15 Neb. 73, 78, 80, 81, 17 N. W. 353.

The mere dissolution of an insolvent partnership does not impair the right of the partnership creditors to have the assets accumulated by the society applied to the joint debts. Tenney v. Johnson, 43 N. H. 144; McDonald & Co. v. Cash & Hainds, 45 Mo. App. 77, 78.

Applying these salutary rules to the case under consideration, what do we find? On June 11, 1904, when the claimed retirement of King from the partnership occurred, the concern was hopelessly insolvent. The contribution made by each of these partners to the business was only $2,500. The evidence shows that both partners had drawn out of the funds of the estate more than they had put in. They owed debts to the amount of $29,000, and according to the result of the examination of their books by the expert, Mr. Peak, their assets were short over $10,000. Their business was falling behind, and each of them knew this fact. Their books and the assets on hand showed this. It excites impatience in the honest and impartial mind for either of them to pretend that they did not know the business of the concern was on its last legs and that bankruptcy was staring them in the face. Mere words are of little significance when the obvious truth contradicts them. After withdrawing from the concern more than they had put into it, with $29,000 of outstanding indebtedness, with known inability to meet it, King is permitted to thrust his hand into the community bag and take out $234, pocket it and walk away, leaving Maxwell to hold what was left in the bag, with apparent authority to apply it to his individual debts, which he proceeded forthwith to do by turning over $3,731.90 of the moneys in bank arising from the sale of partnership goods, for which they had obtained credit as partners and to which said creditors had a preferential right in equity over the individual creditors. Maxwell sent this money to his mother when the note she held against him had about a year and a half to run before its maturity. While it may be conceded for the purposes of this discussion that she did not know that he had taken the money sent her out of partnership funds, it is not unworthy of comment that the indorsements on the back of this note are a little remarkable. They are as follows:

"June 29, 1903, received interest for six months to June 10.
"February, 1904, received $23.85.
"May, 1904, received $25.
"June 19, balance back interest $91.15.
"Received interest due June 10, $140."

It is a little remarkable, if these indorsements were made in the regular course of business, that after the entry of June 19th—"balance back interest $91.15"—they should then go back and enter "Received interest due June 10, $140"; justifying the inference that there had been some posting out of the usual course. That it was Maxwell's scheme and purpose, by the simulated transfer to him, to assume an ostensible legal attitude in order to prefer his mother at the expense of the partnership creditors, is indisputably manifested by the imme-

diate relation between the mere semblance of a dissolution of the partnership and the transfer to his mother. The testimony of the expert witness, Mr. Peak, shows that between the 11th and the 18th days of June, 1904, exclusive of the $3,731.90 paid to Mrs. Sargent, the assets diminished nearly $1,000. The transaction was not bona fide; it was without the consideration the law exacts; it was done when the concern, and both parties, were insolvent; and it was in defiance of the spirit and purpose of the bankrupt law.

Judge Adams, in Re Jones et al. (D. C.) 100 Fed. 781, 783, comments upon the policy of the bankrupt act respecting the marshaling and appropriation of the partnership assets of a bankrupt estate, which is to be done so as to secure an equitable distribution of the property between the partnership and individual creditors according to their priorities; that the partnership property shall be appropriated to the payment of partnership debts. He then asserts:

"It is perfectly apparent what the general scheme of the bankruptcy act contemplates with regard to partnership assets, namely, that they shall be in good faith applied first to the payment of partnership debts; therefore any scheme or device resorted to, by persons in contemplation of bankruptcy, for the purpose of charging partnership assets with the individual liabilities of the partners, is, in substance and effect, violative of the provisions of the act, and, inasmuch as the court is required to so marshal partnership assets as to secure the equitable distribution of the property of the several estates, it is clear that the court must brush away all these attempts at evasion and hold the parties to the requirements of the bankruptcy act, administered broadly and equitably to accomplish the objects intended by it. The scheme resorted to, as shown in the statement of this case, by the bankrupts to foist upon the partnership assets the payment of their individual liabilities, was at least devised for an inequitable purpose within the purview of the bankruptcy act. The physical and undisputed facts surrounding the case are also, in my opinion, sufficient to stamp the transaction as fraudulent within the meaning of the bankruptcy act."

If on the 9th day of June, 1904, Maxwell had covertly withdrawn $3,731.90 of the funds of the concern from the bank and paid it over to his mother on his individual debt, it would have been a fraud on the other partner and the partnership creditors, and Mrs. Sargent would have been amendable therefor at the suit of the trustee in bankruptcy of the partnership estate. So say all the authorities. It would be a mockery of the bankrupt act, which compels the application of the assets of the estate earned and acquired by the partnership society to the benefit of the joint creditors as a preferential right over the individual creditors, to hold that a mala fides dissolution and transfer by King to Maxwell, without a valid consideration, when the concern and both parties were insolvent, could convert the favored individual creditor of Maxwell into a bona fide preferee. If this construction of the bankrupt act were to obtain, all that would be essential for copartners to defeat the equitable priority of partnership creditors in the distribution of the partnership assets by giving it all to the creditors of the individual partner would be, in the face of the known insolvency of the copartners, to go through a simulated dissolution and division among themselves of the joint assets and turning it over to their individual creditors, and the next day enter into voluntary bankruptcy or submit to involuntary bankruptcy and, when the transaction should

be assailed by their partnership creditors, answer that, having gone through the form of a dissolution and partition, the product of the goods obtained from the partnership creditors had been turned over to their individual creditors, who are entitled to hold because they did not know of the dissolution of the partnership or the insolvency of the concern. In other words, the attempted transfer by King to Maxwell was not bona fide; it was not based upon any valid consideration; it was done when the partners were insolvent, and in the teeth of the policy of the bankrupt act. Equity looks to substance, and not to mere form. So that the legal attitude of the defendant, Mrs. Sargent, is as if the simulated dissolution of partnership and the transfer by King to Maxwell had never been gone through with; and, with or without notice of how Maxwell got the money with which to pay her, she must make restitution for the benefit of the partnership creditors, represented by the trustee in bankruptcy.

Counsel for defendant are in error in the statement made in their brief herein that there was no adjudication in bankruptcy against King as an individual. The record before me shows that the adjudication went against the copartnership, as well as against each one of the individual members thereof; and they applied for and obtained their discharge both as partners and as individuals.

While the bill of complaint in this case does not, in its caption, recite that the complainant, Blake, sues as trustee of the individual estate of King, yet the suit is by Blake as trustee of the partnership estate; and, as the fund sued for is recoverable only for the benefit of the partnership estate, the omission of the name of King individually is quite immaterial.

Decree for complainant as prayed.